In the Matter of the Issuance of a Sub-
poena upon Roland E. THOMPSON, a
citizen of the United States of America,
presently residing in the Republic of
the Philippines.

United States District Court
S. D. New York.

Jan. 17, 1963.

Robert M. Morgenthau, U. S. Atty., S. D. New York, for the United States; Arthur I. Rosett, Victor Temkin, Asst. U. S. Attys., of counsel.

Havens, Wandless, Stitt & Tighe, New York City, for Roland E. Thompson; Adelbert C. Matthews, Jr., Malvern Hill, Jr., New York City, of counsel.

LEVET, District Judge.

In this proceeding the United States of America seeks to hold respondent Roland E. Thompson in contempt for his failure to obey a subpoena to appear and testify before a federal grand jury.

Respondent is a citizen of the United States who now resides and for some time has resided in Manila, Republic of the Philippines.

## PROCEEDINGS HEREIN

On June 29, 1962, pursuant to the provisions of Title 28 U.S.C. § 1783, Judge Thomas F. Murphy of this court ordered that a subpoena issue directed to Roland E. Thompson, commanding Thompson to appear before a grand jury for this district on August 2, 1962. The order provided that the subpoena was to be sent to the Consul General at the Embassy of the United States in Manila, Republic of the Philippines for personal service upon Thompson.

The subpoena was personally served upon Thompson in Manila by David W. McClintock, American Vice Consul, on July 13, 1962, together with a first-class 'round trip airplane ticket between Manila and New York and $29.50 in travel funds.

On August 2, 1962, the grand jury met and Thompson failed to appear.

On August 7, 1962, the grand jury reconvened and again Thompson did not appear. The grand jury thereupon returned an indictment charging Thompson with conspiracy to violate Title 18 U.S.C. §§ 281 and 371. On the same day, Judge Wilfred Feinberg of this court signed an order to show cause directing Thompson to show cause why he should not be found in contempt. Under the provisions of 28 U.S.C. § 1784(b) all United States marshals were directed to levy and seize any property within the United States of Thompson or the Wm. H. Rennolds Company, Inc., a Philippine corporation of which Thompson is President and a stockholder, and with whose assets it is alleged his personal assets are mingled.

On August 16, 1962, Judge Feinberg signed a supplemental order continuing

the return date of the order to show cause to September 4, 1962 and providing for the service of these orders on Thompson and the corporation not less than ten days before that date. On August 22, 1962, both orders were served on Thompson and the corporation in Manila by Vice Consul McClintock.

On September 4, 1962, the return date of the motion to punish for contempt, the government appeared, presented evidence and rested its contempt case. The proceedings were adjourned to September 28, 1962 to afford defense counsel an opportunity to obtain written authority to appear in this matter and to present any evidence in Thompson's defense.

On September 13, 1962, respondent's attorneys served notice to take depositions in Manila. On September 14, 1962, the government moved by order to show cause to quash the notice to take depositions. After hearing the parties, this court denied the motion to quash the notice to take depositions and ordered that a Commission issue, directed to the Consul General of the United States of America in Manila, Republic of the Philippines, to examine under oath various persons named in the notice to take depositions. Pursuant to this order, depositions (Res. Exs. E through O) were taken in Manila between the second and ninth of November, 1962.

On December 12, 1962, the respondent presented his proof and both sides rested. Memoranda were filed and oral arguments were heard on December 20, 1962.

Respondent moved to dismiss this proceeding on the following grounds:

1. "Section 1783 of Title 28, U.S.C. is Arbitrary, Capricious, Unreasonable, and Indefinite and is, Per Se, Unconstitutional in Violation of the Fifth Amendment in that no 'Proper Showing' is Required For the Issuance of a Subpoena."

2. "The Jurisdiction and Power and authority of the Court to Issue a Subpoena to an Absent Citizen Under Section 1783 of Title 28, U.S.C. is Permitted Only in a Trial in a Criminal Action Pending Before the Court."

3. "As a Matter of Fact and as a Matter of Law, Thompson's Physical Incapacity Excused him from Complying with the Court's Subpoena."

## CONSTITUTIONALITY OF TITLE 28 U.S.C. § 1783

Respondent asserts that Section 1783 is violative of the standards of due process because the subpoena may be issued by the court upon a showing that the presence of a witness in a criminal proceeding is "desired by the Attorney General." Without words in the statute requiring a "proper showing" to justify the issuance of a subpoena by the court, respondent argues, there is an assumption of unconstitutional power and authority by the Attorney General denying due process of law to the citizens of this country and Thompson personally.

The issuance of a subpoena under Section 1783 is addressed to the discretion of the court. The court in the exercise of its discretion determines whether a proper showing is made. Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932).

Due process does not forbid discretion merely because discretion *may become* arbitrary. The requirements of due process are not premised upon judicial and executive capriciousness. Blackmer v. United States, supra.

Respondent also alleges that he had no material evidence to present to the grand jury. However, a witness under subpoena to appear before a grand jury has no authority to contest obedience on the ground that his appearance is not necessary because he allegedly has no material evidence to give. Nelson v. United States, 201 U.S. 92, 26 S.Ct. 358, 50 L.Ed. 673 (1906); Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919).

Upon the affidavit of Arthur I. Rosett, Assistant United States Attorney, dated

June 28, 1962, the court ordered the issuance of the subpoena. The affidavit disclosed the following:

(1) That Roland E. Thompson was a United States citizen residing in Manila, Republic of the Philippines.

(2) That Thompson's testimony was desired before a grand jury investigating matters of which he had personal knowledge.

■ The affidavit indicates that there was a proper showing made; therefore, the subpoena was properly issued.

■ Aside from the question of proper showing there is no doubt that it is constitutional for a United States Court to subpoena as a witness a citizen residing abroad. The Supreme Court so held in Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932), which upheld the constitutionality of the Walsh Act, predecessor of Section 1783.

## THE APPLICABILITY OF 28 U.S.C. § 1783 TO GRAND JURY PROCEEDINGS

■ Respondent contends that Section 1783 does not authorize the issuance of a subpoena to a witness to appear before a grand jury. This contention is based upon the following grounds:

(1) That Section 1783 provides for the issuance of a subpoena in a "criminal proceeding," and that Grand jury proceedings are not "criminal proceedings."

(2) The legislative history of the 1948 Revision of the Judicial Code indicates that when the Walsh Act (formerly 28 U.S.C. §§ 711, 712) was superseded by Section 1783 it was not the intention of Congress to change the meaning of the Walsh Act. The Walsh Act provided for the issuance of a subpoena in a "trial of any criminal action" instead of a "criminal proceeding," as provided by Section 1783.

These contentions are without merit. United States v. Leff, Docket 143/309 (S.D.N.Y.1954); United States v. Stern, Docket M11–188 (S.D.N.Y.1957), appeal dismissed Stern v. United States, 249 F.2d 720 (2 Cir., 1957), cert. denied, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958). By its terms, Section 1783 provides for the issuance of subpoenas to witnesses in "criminal proceedings." Grand jury proceedings are "criminal proceedings." In Schwimmer v. United States, 8 Cir., 232 F.2d 855, 860, cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed. 2d 52 (1956), the court stated:

> "The term 'criminal proceeding', * * * includes the investigation of a grand jury, since such a body is merely an adjunct or 'appendage' of the court, and the things it does represent an incident or process in the part played by the judicial system in criminal law enforcement. 24 Am.Jur., Grand Juries, § 2."

See also Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1958); Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); Hemans v. United States, 6 Cir., 163 F.2d 228, cert. denied, 332 U.S. 801, 68 S.Ct. 100, 92 L. Ed. 380 (1947).

The term "criminal proceedings" is used in the Federal Rules of Criminal Procedure as a generic term. It can be found in the Rules relating to all stages of criminal matters. (See Rules 1 through 5 and 23 through 31) Furthermore, Rule 17, which governs subpoenas, makes no distinction whatever between subpoenas for testimony at grand jury proceedings and those for testimony at trial. In fact, Rule 17(e)(2) provides a specific cross-reference to Section 1783. This cross-reference indicates that the term "criminal proceedings" has the same meaning in both authorities.

■ Respondent argues that Section 1783 does not apply to grand jury proceedings because the words "before it" as used therein mean "before the court." He cites a number of cases for the obvious proposition that a court and a grand jury are not synonymous. This is too apparent for comment. It is equal-

ly apparent, however, since grand juries are accessories to the criminal jurisdiction of a court, that it is entirely proper for a court to summon "before it" witnesses to testify in a grand jury proceeding. Davey v. United States, 7 Cir., 208 F. 237, cert. denied, 231 U.S. 747, 34 S.Ct. 320, 58 L.Ed. 464 (1913); Bosselman v. United States, 2 Cir., 1917, 239 F. 82; United States v. Smyth, D.C.N.D.Calif.1952, 104 F.Supp. 283; United States v. Neff, 3 Cir., 1954, 212 F.2d 297.

The standard form of grand jury subpoena, a form used in the instant case, stated:

> "WE COMMAND YOU that all and singular business and excuses being laid aside, you and each of you appear and attend before the GRAND INQUEST of the body of the people of the United States of America for the Southern District of New York, at a District Court, to be held ———— and not to depart the Court without leave thereof * * *."

The language of the subpoena agrees with the body of case law holding that a grand jury is an accessory to the court and that grand jury proceedings take place in a court of the United States. Section 1783 is obviously based upon the same construction: A grand jury witness appears before the court to which the grand jury is an accessory.

The respondent relies heavily upon quotations from the legislative history of the 1948 Revision of the Judicial Code, indicating that the codification was not intended in most instances to change the law. From these quotations respondent concludes that since the revisers did not explain that "a criminal proceeding" means somewhat more than "the trial of any criminal action," [1] the change in language must be presumed to mean nothing.

Resort to legislative history ordinarily is a device of limited value when the court seeks aid in reaching the true meaning of the legislature in cases where there is doubt as to the interpretation of the statute. Here, the meaning of the statute is clear. There are no doubtful terms which need to be explained by legislative history. In other words, the language being unambiguous, it is the sole indicator of legislative intent. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); United States v. Missouri Pacific Railroad Co., 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322 (1929).

## STANDING OF RESPONDENT TO QUESTION SUBPOENA

A serious question is presented as to the standing of Roland E. Thompson, at this stage in the proceedings, to raise these issues. Briefly stated, the problem is whether the respondent, who neither personally appeared nor moved to quash the subpoena, may in a contempt proceeding assert the invalidity of the issuance of the subpoena or the unconstitutionality of the statute under which it was issued.

While it would have been entirely proper to raise the constitutionality and validity of Section 1783 in a motion to vacate or quash the issuance of a subpoena, nevertheless, this court still has the authority, and Roland E. Thompson the standing, to raise such issue in this contempt proceeding.

The government contends that Thompson cannot attack the validity of the subpoena or the constitutionality of the statute without appearing personally before the court. It is urged that since Thompson has not personally appeared, if he is allowed to appear by counsel it will afford him a "heads I win, tails you lose" opportunity.

This contention by the government is without merit. In Blackmer v. United States, supra, Blackmer was able to contest the constitutionality of the Walsh Act without appearing personally before the court.

1. The Walsh Act (formerly 28 U.S.C. §§ 711, 712) used the term "trial of any criminal action" instead of "criminal proceeding."

Section 1784(b) in pertinent part provides:

"* * * the court may direct, as a part of such order, that any property of the witness within the United States be levied upon or seized, in the manner provided by law or court rules governing levy or seizure under execution, and held to satisfy any judgment that may be rendered against the witness. * *"

Section 1784(d) provides:

"On the return day of such order or any later day to which the hearing may be continued, proof shall be taken. If the charge of recusancy against the witness is sustained, the court may adjudge him guilty of contempt and, notwithstanding any limitation upon the power of the court generally to punish for contempt, may fine him not more than $100,000 and direct that the fine and costs of the proceeding be satisfied unless paid by a sale of the property levied upon or seized, such sale to be conducted upon the notice required and in the manner provided for sales upon execution. Any such judgment rendered upon service by publication only may be opened for answer within one year."

Since Section 1784 provides only a fine as punishment for contempt, it is fallacious to argue that by allowing Thompson to defend without appearing will give him a "heads I win, tails you lose" opportunity. Here, we do not have the problem that was presented in Eisler v. United States, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949). There, the court refused to hear the appeal from conviction because the defendant was without the court's jurisdiction. Thompson, although not present, can still be fined and the fine satisfied out of his assets that have been seized in the United States. Therefore, Thompson is not in a "heads I win, tails you lose" position. As a result, it is not proper to predicate Thompson's standing on whether he does or does not appear personally before this court.

In Stern v. United States, 2 Cir., 1957, 249 F.2d 720, the Court of Appeals dismissed the appeal from a conviction under Section 1783. The defendants had removed all of their assets and themselves from the United States, therefore making it impossible for the government to collect the fine imposed. The Court of Appeals stated that it would not hear the appeal unless the defendants deposited security with the court to provide assets out of which the fine could be satisfied if the conviction was upheld. Therefore, it is evident that assets in the United States, subject to the court's mandate, will give the respondent standing to question the constitutionality of the statute and the validity of the subpoena without a personal appearance.

This case is clearly distinguishable from those where incarceration is a penalty for contempt. In those cases, the personal appearance of the defendant is essential to entitle him to standing. Here the fine being the sole penalty, the presence of assets within the jurisdiction and their seizure by the government would appear to give the respondent standing to challenge the proceedings without his personal appearance. Stern v. United States, supra.

Respondent may show, by way of defense, that he, in good faith, was unable to comply with the subpoena. United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1949); United States v. Johnson, 2 Cir., 247 F.2d 5, cert. denied, 355 U.S. 867, 78 S.Ct. 116, 2 L. Ed.2d 74 (1957). Nevertheless, respondent's failure to appear on August 2, 1962 is sufficient in itself to establish a prima facie case of the requisite intent and wilfulness to ignore the subpoena. Therefore, the respondent has the burden of proving that he, in good faith, attempted to comply.

As an excuse for non-compliance, Thompson's principal contention is that he was physically incapable of honoring the subpoena.

## THOMPSON'S PHYSICAL CONDITION

From the medical testimony elicited in the depositions, it appears that Thompson has suffered from diabetes and other ailments for a number of years. Although a diabetic, there was no limitation on his normal activities. (SM 26, 34, 62, 233–35, 292) [2]

Thompson did not find it necessary to consult a doctor during the first five months of 1962. (SM 52) During 1962 he was not confined to bed nor had he been hospitalized in the last five years. (SM 240, 273)

The main subject of the medical testimony [3] was whether Thompson was suffering from coronary insufficiency. From the testimony, it appears that Thompson's heart was in normal condition for a man of fifty years. The size and beat of his heart were normal (SM 29, 31; Res. Ex. P); his blood pressure was normal (SM 29, 55, 289) and his electrocardiograms, taken up to July 14, 1962, including those taken during the 1957 three-day hospital stay, were basically within normal limits. (SM 73, 273; Res. Ex. Q)

Electrocardiogram results as far back as 1949 indicated that Thompson had low T waves plus sinus arrhythmia and sinus tachycardia. (Res. Ex. Q) However, his physician, Dr. Luis Vazquez, noted that these symptoms were not "spectacular" and nothing was done concerning them. (SM 267) Thompson's heart did not show any definite signs of coronary insufficiency. (SM 16, 33–34, 83–84, 281) The only medication prescribed for Thompson's heart in the last five years and up to July 14, 1962 has been a peripheral vasodilator used in the circulatory difficulty associated with diabetes. (SM 26, 53–54, 241–42, 287–88; Res. Ex. Q)

Thompson has complained of chest pains for a number of years and his medical records (Res. Ex. Q) indicate that at times these precardial pains were associated with sinusitis (SM 267), gas on the stomach (SM 270), nervousness, and a possible "muscular" problem. (SM 53)

Not until July 14, 1962, the day after Thompson was served with the subpoena, was there mention in Thompson's medical records that he might have a cardiac condition. (SM 58).

On July 16, 1962, Dr. Vazquez, head of a small clinic of which Thompson is a patient, made a certificate which stated that Thompson was advised against traveling. (Res. Ex. T) The certificate states that Dr. Vazquez has been treating Thompson "for several years now for diabetes mellitus, hypertension, circulatory disturbances and cardiac arrhythmias. Recently he has developed precardial pains. Since we cannot rule out cardiac insufficiency, we have advised him not to travel for the time being." This certificate is somewhat evasive in terminology. The doctors in the clinic were frank to concede in their depositions that the presence of coronary insufficiency cannot be ruled out as to any person. (SM 38, 63, 297–99) Therefore, I conclude that this certificate does not provide an excuse for Thompson's failure to appear before the grand jury. No evidence has been presented by the respondent indicating that his travel from Manila to New York to comply with this court's order would have presented a great risk of death or serious illness.

Dr. Augusto Camara, a cardiology expert, examined Thompson on August 1, 1962 at the request of Dr. Vazquez. However, he did not find Thompson in serious condition. In fact, his heart was of normal size, his blood pressure and pulse

2. All references to stenographer's minutes (SM) refer to the consecutively paged minutes of the depositions taken in Manila, Respondent's Exhibits E through O.

3. Thompson was a patient of a small clinic known as Luis Vazquez and Medical Associates. There are six physicians associated with the clinic, three of whom examined and treated Thompson as a patient of the clinic. All reference to "Thompson's physicians," unless otherwise designated, refers to the physicians associated with the clinic who have testified in the depositions as to Thompson's physical condition.

were normal. (SM 29, 39) He testified that there would be some risk in Thompson traveling to New York. However, he admitted that he had not been asked by Thompson if it was safe for him to travel. (SM 36) Also, he admitted that all men of Thompson's age face the risk of a heart attack. (SM 38)

After evaluating the medical testimony of Thompson's physicians regarding the condition of his heart from July 14, 1962 to August 2, 1962, I conclude that there is insufficient evidence that Thompson is suffering from coronary insufficiency. The fact that Thompson's electrocardiogram indicated that he had low T waves is not a sign of insufficiency and is found in normal people. (SM 31–33) It is "merely suspicious of heart trouble." Low T waves may also result from transient nervousness or anxiety. (SM 82, 85, 295–96) Aside from the low T waves, Thompson's physicians were unable to demonstrate that he was suffering from coronary insufficiency.

## OTHER EXCUSES OFFERED FOR THOMPSON'S NON-APPEARANCE

Thompson offered four other excuses for his failure to appear. They are in effect: (1) Thompson was required as a witness in a law suit pending in Manila; (2) there was a tax investigation proceeding against the Wm. H. Rennolds Co. and Thompson did not have a tax clearance to leave Manila; (3) his ex-wife and ex-mother-in-law were ill and he was needed to care for them and give them moral support; (4) the Wm. H. Rennolds Co. would suffer financially if he left at that particular time. None of the above, in light of the evidence in the depositions, I find sufficient as an excuse for Thompson's failure to obey the subpoena.

## CONCLUSION

In conclusion, I find Roland E. Thompson has failed to prove that he attempted, in good faith, to comply with the subpoena or that he had a valid excuse for disregard of the court's mandate. There-

fore, I find Roland E. Thompson in contempt of this court by failing to appear to testify before the grand jury on August 2, 1962, pursuant to subpoena.

The foregoing constitutes my Findings of Fact and Conclusions of Law in this matter.

The hearing for the sentence and for the determination of the application of the Wm. H. Rennolds Co. with respect to the attachments will be held on January 21, 1963, at 3:30 P.M., in room 506.

Submit order on notice adjudicating respondent guilty of contempt, with a provision for the inclusion of sentence.