**UNITED STATES of America,**
**Appellee,**

v.

**Roland E. THOMPSON, Respondent-**
**Appellant.**

**No. 342, Docket 28073.**

United States Court of Appeals
Second Circuit.

Argued March 28, 1963.

Decided June 10, 1963.

Robert M. Morgenthau, U. S. Atty., Southern District of New York (Arthur I. Rosett, Arnold N. Enker, Asst. U. S. Attys., of counsel), for appellee.

Havens, Wandless, Stitt & Tighe, New York City (Adelbert C. Matthews, Jr., Malvern Hill, Jr., New York City, of counsel), for respondent-appellant.

Before WATERMAN and KAUFMAN, Circuit Judges, and BRYAN, District Judge.

WATERMAN, Circuit Judge.

Roland E. Thompson appeals from a judgment of the United States District Court for the Southern District of New York, Levet, J., holding him in contempt for failure to comply with a grand jury subpoena issued under the provisions of 28 U.S.C. § 1783. We hold that the judgment below must be reversed.

Thompson is an American citizen who, since 1938, has resided in the Philippines where he has substantial business interests. During June 1962, a grand jury sitting in the Southern District of New York was investigating alleged fraud in the procurement of contracts, and other alleged irregularities, in the administration of the Mutual Security Act of 1954. In furtherance of this investigation a subpoena was issued to Thompson by order of District Judge Thomas F. Murphy. The subpoena, bearing a return date of August 2, 1962, was personally served on appellant by the American Vice Consul in the Philippines.[1] On July 16, 1962, Thompson wrote to the Presiding Judge of the District Court saying that he was unable to comply with the subpoena by reason, *inter alia*, of his poor health. Annexed to this letter was a certificate of appellant's physician, Dr. Luis A. Vazquez, stating that he had advised Thompson not to travel.

Thompson did not appear before the grand jury on August 2, 1962. On August 7, the grand jury filed an indictment charging him and one Addison R. Ketchum, a former employee of the International Cooperation Administration, with conspiracy to defraud the United States. Ketchum, thereupon, was arrested, and a bench warrant was issued for Thompson's arrest. The same day the district court issued an order directing Thompson to show cause why he should not be found in contempt for failure to appear before the grand jury on August 2.[2] The order was personally served upon appellant and due service by publication was made.[3] After continuances to permit appellant's counsel to take depositions in Manila, a hearing upon the order to show cause was had. On January 21, 1963, Judge Levet found Thompson to be in contempt and ordered that he be fined $50,000, subject to his purging himself by appearing before the same grand jury on February 26, 1963. Notice of the present appeal was filed on February 21, 1963.

---

1. In conformity with the requirements of 28 U.S.C. § 1783(b), Thompson was tendered a first-class round trip airline ticket between Manila and New York, together with $29.50 in travel funds.

2. Pursuant to the provisions of 28 U.S.C. § 1784(b) United States Marshals were directed to, and did, levy upon and seize American property, valued at approximately $180,000, owned by Thompson and the Philippines company of which he is president.

3. 28 U.S.C. § 1784(c).

We are confronted with three issues on this appeal:

I. Does the respondent-appellant as a defense to a contempt action brought for failure to obey the subpoena have standing to challenge the power of the district court to issue a grand jury subpoena under 28 U.S.C. § 1783, or could such a challenge properly have been made only by a timely motion to quash the subpoena?

II. Does 28 U.S.C. § 1783 authorize the federal district courts to issue a subpoena requiring a United States citizen residing in a foreign country to appear before a grand jury?

III. Did the court below consider and pass upon the issue of fact which controlled the question whether respondent-appellant was guilty of contempt for noncompliance with the subpoena?

We shall discuss each of these issues in turn.

### I.

■ Although appellant sought to justify his noncompliance with the subpoena by means of his July 16, 1962 letter to the Presiding Judge of the District Court, it was not until the hearing on the contempt action that Thompson challenged the power and jurisdiction of the court below to issue a grand jury subpoena under 28 U.S.C. § 1783. The Government now contends, as it did below, that, by failure to make a timely motion to quash, Thompson lost all standing to assert the invalidity of the issuance of the order. In so contending the Government relies principally upon Howat v. Kansas, 258 U.S. 181, 189–190, 42 S.Ct. 277, 66 L.Ed. 550 (1922) and United States v. United Mine Workers, 330 U.S. 258, 290–301, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

■ Howat v. Kansas, supra, establishes the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties, even if the order was *erroneously* issued, until it is reversed by orderly and proper proceedings. See United States v. United Mine Workers, 330 U.S. at 293, 67 S.Ct. at 695. Here, however, it is precisely the jurisdiction or power of the court below which is challenged by the appellant. We have no doubt that as a matter of international law or constitutional limitations, the United States "possesses the power inherent in sovereignty to require the return to this country of a citizen, resident elsewhere, whenever the public interest requires it, and to penalize him in case of refusal." Blackmer v. United States, 284 U.S. 421, 436–437, 52 S.Ct. 252, 254, 76 L.Ed. 516 (1931). That power must, however, be exercised by Congress, and the district court has no such power or jurisdiction unless expressly conferred by statute. Blackmer v. United States, supra.

The Government further argues, relying on United States v. United Mine Workers, supra, and United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950), that even assuming the district court was without power or jurisdiction to order a grand jury subpoena under § 1783, Thompson could not ignore with impunity such an order which was valid on its face. In the United Mine Workers case it was held that except in circumstances of plain usurpation, a United States District Court has the authority to determine its own jurisdiction in a matter before it, and to maintain the *status quo*, as by issuance of a temporary restraining order, pending the determination of that issue. The Supreme Court concluded, therefore, that even should the district court be ultimately found, in such a case, to lack jurisdiction over the parties or the subject matter, it had power to punish violations of its prior restraining order as contempt. Here, however, the court was not seeking to preserve existing conditions pending a jurisdictional determination. Similarly inapposite is United States v. Bryan, supra, which dealt with the failure of a witness under subpoena to raise objections to the competence of the body before which he appeared to testify. That decision did not touch the

question of the validity of the subpoena which was issued or the power or jurisdiction of the body issuing it.

■ We hold, therefore, that a mandate is void which is beyond the power and jurisdiction of the issuing court and that the court may not punish for its violation. Ex parte Rowland, 104 U.S. 604, 26 L.Ed. 861 (1881); In re Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402 (1888); Ex Parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117 (1885). Thus, the power and jurisdiction of the court to issue a subpoena may be raised for the first time in a proceeding to punish for contempt.

## II.

■ Appellant's major contention, in attacking his conviction below, is that the Walsh Act, 28 U.S.C. § 1783 et.seq., confers power upon the district courts to issue subpoenas to witnesses outside the United States only for purposes of securing their testimony in a *criminal proceeding*, and that a grand jury investigation is not such a proceeding.

28 U.S.C. § 1783 provides, in material part:

> "Subpoena of witness in foreign country
>
> "(a) A court of the United States may subpoena, for appearance before it, a citizen or resident of the United States who:
>
> *   *   *   *   *   *
>
> "(2) is beyond the jurisdiction of the United States and whose testimony in a criminal proceeding is desired by the Attorney General."

The expression "criminal proceeding", as it is found in the statute, is, at best, ambiguous. The weight of authority would appear to hold that the expression as generally employed does not embrace

grand jury investigations, and that "criminal proceedings" have not been commenced until an indictment, information or complaint has been lodged against the accused. Post v. United States, 161 U.S. 583, 587, 16 S.Ct. 611, 40 L.Ed. 816 (1896); [4] Mulloney v. United States, 79 F.2d 566, 578–579 (1 Cir. 1935), cert. denied, 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468; Orfield, The Federal Grand Jury, 22 F.R.D. 343, 391; Ballentine's Law Dictionary, p. 312 (1948 ed.). And see In re Groban, 352 U.S. 330, 333, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957); United States v. Price, 163 F. 904, 906 (S.D. N.Y.1908), aff'd, Price v. Henkel, 216 U.S. 488, 30 S.Ct. 257, 54 L.Ed. 581 (1910); Durban v. United States, 221 F.2d 520 (D.C.Cir.1954). Some authorities, however, speaking in a variety of contexts, but, again, speaking without reference to the specific statute before us, have interpreted the phrases "proceeding" or "criminal proceeding" more broadly. See Schwimmer v. United States, 232 F.2d 855, 860 (8 Cir. 1955), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52; Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Hemans v. United States, 163 F.2d 228 (6 Cir. 1947), cert. denied, 332 U.S. 801, 68 S.Ct. 100, 92 L.Ed. 380; Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940).

■ As the statute before us is ambiguous on its face, we must turn to legislative history to ascertain Congress's intent in enacting the provision. Colony, Inc. v. Commissioner, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958); Offutt Housing Co. v. Sarpy County, Neb., 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151 (1956); District of Columbia v. Y. M. C. A., 221 F.2d 56 (D.C.Cir.1955).

The Walsh Act, 44 Stat. 835, 28 U.S.C. [formerly] §§ 711–718, was enacted in

4. "Criminal proceedings cannot be said to be brought or instituted until a formal charge is openly made against the accused, either by indictment presented or information filed in court, or, at the least, by complaint before a magistrate. * * * The submission of a bill of indictment by the attorney for the government to the grand jury, and the examination of witnesses before them, are both in secret, and are no part of the criminal proceedings against the accused * * *." 161 U.S. at 587, 16 S.Ct. at 613.

1926 as a special purpose statute designed to enable the Government to bring back from Europe two material witnesses to testify in the trial of actions arising out of the Teapot Dome scandals. The act was passed in the closing hours of the session, without a committee hearing, under suspension of rules, and without an opportunity for floor debate. See Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 516 (1932).

As originally enacted, 28 U.S.C. [former] § 712 provided, in pertinent part, as follows:

> "712. Trial of criminal actions; witnesses beyond jurisdiction of United States; issue of subpoena addressed to consul in foreign country.
>
> "Whenever the *attendance at the trial of any criminal action* of a witness, being a citizen of the United States or domiciled therein, who is beyond the jurisdiction of the United States, is desired by the Attorney General or any assistant or district attorney acting under him, the judge of the court *before which such action* is pending, or who is to sit in the trial of the same, may, upon proper showing, order that a subpoena issue \* \* \* commanding such witness to appear before the said court at a time and place therein designated."
> (Emphasis supplied.)

By its use of the expression, "the trial of any criminal action," it is clear that Congress did not intend this original provision to apply to grand jury investigations. The subpoenas contemplated by the provision were to be issued by the judge of the court "before which such *action* is pending or who is to sit in the trial of the same."

■ In the 1948 revision and codification of the Judicial Code, the Walsh Act was redrafted and the phrase "criminal proceeding" was used in place of the phrase "trial of any criminal action." The question, thus, is whether Congress, by using the phrase "criminal proceeding" in the 1948 revision, intended to enlarge the scope of the Walsh Act, so as to make it applicable to grand jury investigations.

■■ It is well settled that where statutes are revised and consolidated a change in phraseology does not import a change in the law unless the intent of the legislature to alter the law is evident or the language of the new act is palpably such as to require a different construction. United States v. Ryder, 110 U.S. 729, 740, 4 S.Ct. 196, 28 L.Ed. 308 (1884); Anderson v. Pacific Coast S.S. Co., 225 U.S. 187, 199, 36 S.Ct. 626, 56 L.Ed. 1047 (1912); Gulf Research & Development Company v. Schlumberger Well Surveying Corporation, 92 F.Supp. 16, 18–19 (S.D.Cal.1950); 2 Sutherland, Statutory Construction 255 (3d ed. 1943). See also discussion in 1 McKinney's Consolidated Laws of New York Annotated, Statutes, § 422, and cases cited therein. It is also established that the revisers' notes to the 1948 codification of the Judicial Code, Title 28 U.S.C., are authoritative guides to congressional intent and to the proper interpretation of the statute. United States v. National City Lines, 337 U.S. 78, 81, 69 S.Ct. 955 (1949); Adamowski v. Bard, 193 F.2d 578, 581 (3 Cir. 1952), cert. denied, 343 U.S. 906, 72 S.Ct. 634, 96 L.Ed. 1324; United States v. Scott & Williams, 88 F.Supp. 531, 533 (S.D.N.Y.1950) (Kaufman, J.); Gulf Research & Development Company v. Schlumberger Well Surveying Corp., supra.

The revisers' notes to 28 U.S.C. § 1783 refer to two specific instances where changes of language were made, and indicate the reasons for such changes. Neither reference concerns the phrase "criminal proceeding" and the notes to the section state that any changes other than those specifically mentioned were merely "changes made in phraseology." In commenting on the general policies under which the revisers worked, Mr. William W. Barron, Chief Reviser of Title 28, wrote:

> "Because of the necessity of consolidating, simplifying and clarifying numerous component statutory

enactments no changes of law or policy will be presumed from changes of language in revision unless an intent to make such changes is clearly expressed.

"Mere changes in phraseology indicate no intent to work a change of meaning but merely an effort to state in clear and simpler terms the original meaning of the statute revised.

"Congress recognized this rule by including in its reports the complete Reviser's Notes to each section in which are noted all instances where change is intended and the reasons therefor."

Barron, The Judicial Code, 1948 Revision, 8 F.R.D. 439, 445–446. The same views have been expressed by other persons concerned with the revision. See Preface to Title 18, U.S.C.A. by Judge Alexander Holtzoff, pp. v. and vi.; Report of House of Representatives Committee on Revision of the Laws accompanying H.R. 7124 (H.R.Rep. No. 2646, 79th Cong., 2d Sess. (1946); Statement of Charles J. Zinn, Law Revision Counsel of the Committee on the Judiciary, Cong. Service, 28 U.S.C., 80th Cong., 2d Sess. (1948) at pp. 1980–81.

In light of these authorities we conclude that Congress did not intend to enlarge the scope of the Walsh Act when it enacted revised Section 1783 of Title 28 U.S.C. We are constrained to hold, therefore, that the district court was without power or jurisdiction to issue a subpoena requiring a citizen residing abroad to appear before a grand jury in this district. It follows that respondent-appellant was not required to obey the subpoena and cannot be held in contempt for his failure to comply with it.

III

■■■ Even if 28 U.S.C. § 1783 could be interpreted with sufficient breadth to encompass grand jury subpoenas, we should be required to reverse the judgment below for failure of the district judge to rule upon the factual issue which controlled the question whether respondent-appellant was guilty of contempt.

In passing adversely upon respondent's excuse for noncompliance with the subpoena, Judge Levet held:

"No evidence has been presented by the respondent indicating that his travel from Manila to New York to comply with this court's order would have presented a great risk of death or serious illness. * * * I conclude that there is insufficient evidence that Thompson is suffering from coronary insufficiency." 213 F.Supp. 378–379.

We have some doubts about the correctness of Judge Levet's ruling on this issue.[5] We believe, however, that he erred in assuming that the primary question before him was a medical one, whether Thompson was in fact physically capable of responding to the subpoena without undue risk to his health. The question for decision was, rather, whether Thompson's noncompliance with the subpoena was *in mala fides* and demonstrated a contumacious disregard of the authority of the court. See United States v. Bryan, 339 U.S. 323, 332, 70 S.Ct. 724, 94 L.Ed. 884 (1950).

The question of fact that controlled that issue, and the one which should have

---

5. On the issue of physical ability to respond to the subpoena appellant introduced into evidence below the depositions of four physicians, whose medical qualifications have not been questioned. All concurred in the medical judgment that appellant could have traveled from Manila to New York only at some risk to his life or health. Although Thompson was requested to submit to examination by United States Embassy physicians in Ma-

nila, the Government did not offer to put into evidence the reports of that examination, nor did it offer any other expert testimony which might have served to rebut the evidence of Thompson's own physicians. Counsel for the Government chose, rather, to rely upon attempts to show that appellant's symptoms did not justify the medical conclusions which his physicians had formed.

been resolved below, was whether Thompson *actually believed* that compliance with the subpoena would create a risk of harm to him or whether the physicians' examinations and certificate made subsequent to July 13, 1962 were part of a scheme engineered by appellant to evade the order of the court.

Upon the record before us the proper disposition of that question is by no means clear. Persuasive of Thompson's good faith are his immediate response by letter to the subpoena, his professed willingness to be examined under oath in Manila concerning the subject matter of the grand jury investigation, his voluntary submission to physical examination by Embassy doctors, and the medical testimony of his own physicians. Persuasive of Thompson's bad faith are some inconsistencies in the reports of his physicians, and several apparently-contrived non-medical excuses which he advanced for his nonappearance.

The judgment of the district court is reversed and the cause is remanded with instructions that the contempt proceedings be dismissed.

KAUFMAN, Circuit Judge (dissenting).

I agree with the answers given by the majority to questions I and III. I too believe that appellant raised his objections to the scope of the District Court's subpoena power in a timely fashion, and that the District Judge improperly addressed himself to the question whether appellant was in fact physically able to comply with the subpoena rather than the question whether he, in good faith, believed that his health would be seriously endangered by so complying. I would remand for further findings on this question of fact. I cannot, however, join with the majority in holding that the District Court was powerless under 28 U.S.C. § 1783 to issue a subpoena beyond the territorial limits of the United States for the purpose of securing the presence of the appellant as a witness before the grand jury, for I find their conclusion to be a tortured one.

My brothers go astray, I believe, when they resort to an ambiguous legislative history. This they do after determining that two words in section 1783, "criminal proceeding", have no settled meaning. They err when they search for the "definition" of these words without the anterior appreciation of their context which can be derived from the face of the statute itself. Even the simplest of words may become ambiguous when viewed in isolation and out of context. Thus, as an illustration, "the word 'bill' may refer to an evidence of indebtedness, to currency, to a petition, to a person's name, to the anatomy of a bird, a portion of a cap and a host of other objects * * *." 2 Sutherland, Statutory Construction § 4505, at 319–20 (1943). So too with the phrase "criminal proceedings." As the Supreme Court has noted, "The word 'proceeding' is not a technical one, and is aptly used by courts to designate an inquiry before a grand jury." Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

Since the language of 28 U.S.C. § 1783 is not "technical", it is necessary, before determining whether that language is ambiguous, to consider what the modern-day purpose of the statute must be. It seems clear beyond question that this section is designed to facilitate the compulsory disclosure of information so as best to further the enforcement of the criminal law. I am at a loss to see why this purpose is served any the less by testimony given upon compulsory attendance incident to a grand jury investigation than upon attendance at a criminal trial already under way. Indeed, the cause of justice might well be impeded under the strict construction of section 1783 adopted by the majority. Surely we should be hesitant to attribute to Congress an intention to promulgate a statute so designed that federal law-enforcement agencies can be frustrated by the mere withdrawal beyond our territorial limits of individuals whose testimony is indispensable to the securing of a criminal indictment.

The use of the phrase "criminal proceeding" in contexts quite similar to that before us lends further support to the conclusion that section 1783 was meant to empower the federal courts to issue extraterritorial subpoenas in aid of the grand jury as well as of an actual criminal trial. Thus, the Federal Rules of Criminal Procedure, by their own terms expressly designed "to provide for the just determination of every *criminal proceeding* * * * to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay" (emphasis added)— purposes which in many respects parallel those of section 1783—include rules governing proceedings before the grand jury (Rule 6), thereby indicating that Congress, without hesitation, viewed the grand jury as an integral element of the criminal process. Moreover, Rule 17 of the Federal Rules of Criminal Procedure deals with the use of the subpoena in criminal proceedings, and there is no doubt but that the court's subpoena power under this rule was meant to extend not only to the criminal trial but to the grand jury proceeding as well. See the Revisers' Notes to proposed Rule 20 (the forerunner of the present Rule 17), 1943 Preliminary Draft of the Fed.R.Crim.P., at 107. A comparison between the Federal Civil Rule dealing with the subpoena, Rule 45, and Federal Criminal Rule 17 reveals the interesting fact that the language of the relevant subsections is identical in almost every respect, except that the former employs the term "action" while the latter uses the word "proceeding". It is fair to conclude that "proceeding" was purposefully selected in order to render the criminal subpoena available at stages in the criminal process other than the trial. The specific cross-reference to 28 U.S.C. § 1783 in Criminal Rule 17(e)(2) warrants the inference that the term "criminal proceedings" in both contexts was meant to be construed *in pari materia.*

It is thus undisputed that if appellant were within the geographical boundaries of the United States, Rule 17(e)(1), he would be punishable for contempt for failure to comply with the court's order, whether employed as an incident to a grand jury proceeding or a criminal trial. Indeed, there has apparently never been any special provision of statute or rule for the issuance of grand jury process; grand jury process and court process have always been viewed as synonymous, cf. Brown v. United States, 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), well before the adoption of the Federal Rules. See Act of February 26, 1853, § 3, 10 Stat. 169; Rev.Stat. § 877, 28 U.S.C. former section 655. If the subpoena power *within* national boundaries extends without distinction to use before the grand jury as well as in criminal trials, I should think that, if Congress intended to depart from this long-standing unity of process and to limit the extraterritorial subpoena power solely to the latter, it would have expressly so stated in the language of 28 U.S.C. § 1783.

Moreover, in addition to the Federal Rules, there is another area of the law, presenting policy considerations quite similar to those before us today, in which the grand jury proceeding has been deemed by the Supreme Court to be a criminal proceeding. In determining the propriety of immediate appeal from court orders issued prior to a criminal indictment, the Court recently held that "Presentations before a United States Commissioner * * * as well as before a grand jury * * * are parts of the federal prosecutorial system leading to a criminal trial. Orders granting or denying suppression in the wake of such proceedings are truly interlocutory, for the criminal trial is then fairly in train." Di Bella v. United States, 369 U.S. 121, 131, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). The reasons for so holding were earlier stated in detail in Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940), in language which might apply just as readily to the instant case:

"It is no less important to safeguard against undue interruption

the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the 'orderly progress' of investigation should no more be encouraged in one case than in the other. That a grand jury proceeding has no defined litigants and that none may emerge from it, is irrelevant to the issue."

I find the absence of a formal prosecutorial or adversarial proceeding to be just as irrelevant in this case as the Supreme Court found it to be in Cobbledick, and for precisely the same reasons. See also, In re Grand Jury Investigation, 2d Cir., 318 F.2d 533.

I am impelled to conclude that the meaning of the phrase "criminal proceeding" in 28 U.S.C. § 1783 is thus manifest, see United States v. Leff, Docket 143/309 (S.D.N.Y.1954); United States v. Stern, Docket M11–188 (S.D. N.Y.) appeal dismissed, 249 F.2d 720 (2d Cir. 1957), cert. denied, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958), and that resort to the statutory history is not only inappropriate, see United States v. Missouri Pac. R. R., 278 U.S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322 (1929); Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917), but in this case is positively misleading; the majority pays tribute to congressional intention which is ambiguous and resort to which serves only to make clear language cloudy.[1] It seems to me that the Federal Grand Jury, empowered to inquire only into the possible commission of crime, has been dealt a heavy blow by this court's restricted and unwarranted holding. Those citizens who

seek to avoid the searching eye of the grand jury need simply seek a safe haven beyond our territorial limits. To reach this result by the device of ignoring the commonly accepted meaning of statutory language is an act in which I can not join.

I would reverse and remand for further findings of fact.

---

1. Perhaps one word about the legislative history of section 1783 is in order. The majority rests largely upon the words of the Reviser of title 28, to the effect that "Mere changes in phraseology indicate no intent to work a change of meaning but merely an effort to state in clear and simpler terms the original meaning of the statute revised." If the change in language from "trial of any criminal action" to "criminal proceeding" (the latter

phrase being indisputably of broader connotation) was meant to be a "clear and simpler" means of limiting the subpoena power to criminal trials, then the ways of words are far more perverse than I had ever imagined! If the present purport of section 1783 is as found by the majority, then the language of the former Walsh Act seems an ideal form of expression. The revision, therefore, can hardly be brushed aside as merely clarificatory.