In the Matter of the Petition of Leslie
BACON for Writ of Habeas Corpus,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 71–1826.

United States Court of Appeals,
Ninth Circuit.

Sept. 30, 1971.

16. *See also* Moskovtz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 780, 793–96 (1943).

Benjamin Dreyfus (argued), of Garry, Dreyfus, McTernan & Brotsky, San Francisco, Cal., Jennie Rhine (argued), Oakland, Cal., Jan Peterson, Seattle, Wash., for plaintiff-appellant.

Robert L. Keuch (argued), Dept. of Justice, Robert C. Mardian, Asst. Atty. Gen., Washington, D. C., Stan Pitkin, U. S. Atty., Seattle, Wash., for defendant-appellee.

Before HAMLEY, KOELSCH and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

This case is a companion to In re Bacon, 9 Cir., 1971, 446 F.2d 667 (1971) in which we affirmed a civil contempt order entered against Leslie Bacon for refusal to answer questions before a grand jury. In this appeal Bacon challenges the method by which she was brought before the grand jury, namely, her arrest and detention under a material witness arrest warrant.

On April 22, 1971, the United States Attorney for the Western District of Washington swore out a material witness complaint before District Judge Boldt, alleging that Bacon had personal knowledge of matters material to a grand jury investigation and that a subpoena would be ineffective in securing her presence because she would flee the jurisdiction of the court and of the United States to avoid giving testimony. Relying solely on that complaint, Judge Boldt issued an order commanding the United States Marshal to arrest Bacon

and to transport her to Seattle in his custody unless she posted bail of $100,-000.00. At the same time a subpoena was issued requiring Bacon's appearance before the grand jury in Seattle on April 28.

On April 27 agents of the Federal Bureau of Investigation, attempting to execute the arrest warrant, broke into a residence in Washington, D. C. but were unable to locate Bacon. The agents returned later the same day, and this time found Bacon on the roof of an adjoining building and took her into custody. Enroute to the F.B.I. office the agents served the subpoena on Bacon. Later they transferred her to the custody of the United States Marshal in lieu of bond in the amount set by Judge Boldt.

On April 28, a removal hearing was held before Chief Judge Sirica in the District Court for the District of Columbia. At the hearing the court denied Bacon's motions to quash the arrest warrant and in the alternative to reduce bail. On April 29, the Court of Appeals for the District of Columbia Circuit dismissed Bacon's petition for a writ of habeas corpus, stating *inter alia* that Bacon would have ample opportunity to present all her issues in the District Court for the Western District of Washington before any appearance before the grand jury. Bacon v. United States, D.C.Cir., 1971, unpublished (No. 71-1312, April 29, 1971).

Bacon was then flown to Seattle in the custody of the United States Marshal. She testified before the grand jury on April 30, May 1 and 2. On May 3 Bacon filed a petition for a writ of habeas corpus in the District Court for the Western District of Washington, again challenging the validity of her arrest and the imposition of bail. On May 6, Judge Boldt denied the petition and continued bail in the amount previously set. It is that May 6 decision that is appealed in this case.

## I. *Prematurity or mootness.*

▮ There is a substantial question whether this case has been rendered either premature or moot by the District Court's civil contempt order committing Bacon for her refusal to answer grand jury questions, affirmed in 446 F.2d 667.[1]

### A. *Prematurity.*

The prematurity doctrine does not apply here. Historically, it was invoked to prevent a prisoner from challenging the second of two consecutive sentences while he was still serving the first. *See* McNally v. Hill, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238; United States ex rel. Parker v. Ragen, 7 Cir., 1948, 167 F.2d 792. This case is different. When she filed her habeas corpus petition Bacon was in custody solely because of the order she now challenges. Since that time the contempt order has added a second basis for holding Bacon, but neither the Government nor the District Court has indicated that the original order has lost its force. Bacon challenges an order under which she is *presently* being detained. Moreover, the historic basis for the doctrine has been rejected. *See* Peyton v. Rowe, 1968, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (expressly overruling McNally v. Hill); Imbler v. Oliver, 9 Cir., 1968, 397 F.2d 277; *see generally* Note, Developments in the Law; Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1072-1087 (1970).

### B. *Mootness.*

A more substantial question is whether the District Court's civil contempt order has rendered this case moot. Re-

---

1. We find no merit in the government's argument that Bacon waived her right to challenge her arrest and detention because she testified for three days before filing her habeas corpus petition. Bacon does not challenge the right of the grand jury to call her as a witness under subpoena. She challenges only her arrest for that purpose and her continued detention while testifying. Her testimony under the compulsion of an unchallenged subpoena and the threat of contempt is not a waiver of her right to challenge the arrest and detention.

cent decisions of the Supreme Court emphasize that the mootness doctrine should no longer be mechanically applied in habeas corpus cases. *See* Carafas v. La Vallee, 1968, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (expressly overruling Parker v. Ellis, 1960, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963), where the Court rejected the contention that the petitioner's claim was mooted by his unconditional release from custody after he had filed his petition in the District Court. In Sibron v. New York, 1968, 392 U.S. 40, 88 S.Ct. 1889, 1912, 20 L.Ed. 2d 917 appellant had served his six-month sentence and was released before he was able to present his case on appeal, but the Court nevertheless rejected a mootness contention:

> "Many deep and abiding constitutional problems are encountered primarily at a level of 'low visibility' in the criminal process—in the context of prosecutions for 'minor' offenses which carry only short sentences.[12] We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct." 392 U.S. at 52–53, 88 S.Ct. at 1897. (footnote omitted.)

See also Ginsberg v. New York, 1968, 390 U.S. 629, 633 n. 3, 88 S.Ct. 1274, 20 L.Ed.2d 195.

Bacon's case presents the type of low visibility incursion by government upon personal liberty referred to in *Sibron.* Had she not refused to answer questions before the grand jury, her detention as a material witness would have ended long before this court could entertain her case. If the District Court's contempt order is dissolved in the future and Bacon is again held solely as a material witness, the completion of her testimony could not conceivably take any more than a few days. Bacon's release at that time would again moot the case, thereby precluding her from ever obtaining a ruling on the lawfulness of the restraint imposed upon her. This is precisely the result that the Supreme Court sought to avoid in *Sibron.*

■ Bacon's case does not fail for mootness or prematurity because it was ripe at the time she filed her petition in the District Court,[2] she remains subject to possible custody at least in part under the authority of the order that she attacks, and the possibility of her future detention under that order provides a sufficient collateral consequence. Compare Russo v. United States, 9 Cir., 1971, 448 F.2d 369 and Bratcher v. McNamara, 9 Cir., 1971, 448 F.2d 222.

This court has released Bacon on her own recognizance, subject to certain conditions, pending her appeal in No. 71-1825. We have held that release on bail destroys "custody" for habeas corpus purposes. Matysek v. United States, 9 Cir., 1964, 339 F.2d 389. While it is not clear from the opinion who granted bail in *Matysek,* it must have been the lower court. Otherwise, the courts of appeals could never grant bail in a habeas corpus case because to do so would automatically oust the courts of jurisdiction.

II. *Authority of Federal Government to Arrest and Detain Grand Jury Material Witnesses.*

■ It is well-settled that the District Court may compel the performance of the duty of a witness to testify before a grand jury by issuing a subpoena, and by imprisonment for contempt. *See* Brown v. United States, 1959, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609; Blair v. United States, 1919, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979, Rules 17(g), 42, F.R.Crim.P. However, Bacon argues that the government has no power to assure the attendance of grand jury witnesses by arrest and detention before disobedience of a subpoena.

---

2. Nothing in this opinion is to be construed as permitting the filing of a petition for habeas corpus by one not in fact in custody at the time and challenging only a future detention, whether certain or threatened. *See* United States v. Meyer, 8 Cir., 1969, 417 F.2d 1020, 1022 n. 2.

The Government argues that Congress conferred the power to arrest and detain Bacon as a material witness in 18 U.S.C. § 3149 and Rule 46(b) F.R.Crim.P.[3] Section 3149 was enacted as part of the Bail Reform Act, and provides:

"If it appears by affidavit that the testimony of a person is material in any criminal proceeding, and if it is shown that it may become impracticable to secure his presence by subpoena, a judicial officer shall impose conditions of release pursuant to section 3146. No material witness shall be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and further detention is not necessary to prevent a failure of justice. Release may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure."

Rule 46(b) contains similar provisions:

"(b) *Bail for Witness.* If it appears by affidavit that the testimony of a person is material in any criminal proceeding and if it is shown that it may become impracticable to secure his presence by subpoena, the court or commissioner may require him to give bail for his appearance as a witness, in an amount fixed by the court or commissioner. If the person fails to give bail the court or commissioner may commit him to the custody of the marshal pending final disposition of the proceeding in which the testimony is needed, may order his release if he has been detained for an unreasonable length of time and may modify at any time the requirement as to bail."

A. *Power to Arrest and Detain.*

It will be noted that neither of the foregoing provisions expressly grants the power to arrest a material witness. In view of the legislative history of the Bail Reform Act of 1966, the absence of this power in § 3149 should come as no surprise. The Act was intended to effect the release of persons being detained when their detention served "neither the ends of justice nor the public interest." Bail Reform Act of 1966, Pub.L. 89–465, § 2, 80 Stat. 214.[4] However, it also contains a positive grant of authority to judicial officers "to impose conditions of release in the case of material witnesses whose presence cannot practicably be secured by subpoena." S.Rep.No.750, 89th Cong., 1st Sess. 19 (1965), and to detain witnesses if they are unable to comply with the conditions of release.

On balance, a grant of power to arrest material witnesses can fairly be inferred from Rule 46(b) and from § 3149 as well. Like § 3149, Rule 46(b) provides for the imposition of bail on a material witness, and, in language even more forceful than § 3149, Rule 46(b) further states that the witness' failure to post bail may result in his being committed to the custody of the marshal pending final disposition of the proceeding in which the witness' testimony is needed. Although Rule 46(b) does not mention arrest, the Rule applies only to those witnesses whose presence cannot practicably be secured by subpoena. It would make little sense to give the court the power to impose bail, but deny it the power to issue a warrant for the purpose of bringing the witness before the court in the first instance. Congress cannot be presumed to have granted a power to the courts and yet withheld the only effective means of implementing it. *See* Gemsco, Inc. v. Walling, 1945, 324 U.S. 244, 255, 65 S.Ct. 605, 89 L.Ed. 921; United States v. Jones, 7 Cir., 1953, 204 F.2d 745, 754.

---

3. The Federal Rules of Criminal Procedure have the force and effect of statutes, and supersede all prior conflicting laws. 18 U.S.C. §§ 3771, 3772; Ochoa v. United States, 9 Cir., 1948, 167 F.2d 341, 345.

4. For a more complete discussion of the purposes of the Bail Reform Act of 1966 see H.R.Rep.No.1541, 89 Cong. 2d Sess. (1966) in 2 1966 U.S.Code Cong. & Admin.News, p. 2293.

In addition, the legislative and statutory history of Rule 46(b) support the proposition that a power to arrest should be implied. Such a power was expressly provided for by statute until 1948. *See* Act of September 24, 1789, ch. 20, § 33, 1 Stat. 91; Act of August 8, 1846, ch. 98, § 7, 9 Stat. 73; 28 U.S.C. §§ 657, 659 [5] (1925), repealed by Act of June 25, 1948, Pub.L.No. 772, ch. 645, § 21, 62 Stat. 862. Unfortunately, the effect of Rule 46(b) on superseded sections 657 and 659 of Title 28 does not clearly emerge from the statutory history. The Committee Note to Rule 48(b) of the Second Preliminary Draft of the Rules (renumbered Rule 46(b) in the final draft) states that both sections 657 and 659 are superseded by the new rule. The Advisory Committee note to the final draft of Rule 46(b) indicates only that "[t]his rule is substantially a restatement of [existing law] 28 U.S.C.A. former 657." This unexplained omission of any reference to § 659 is critical in the present case because it was § 659 and not § 657 that contained the only express reference to a power to arrest witnesses. Thus, this portion of the statutory history fails to indicate conclusively whether the power to arrest a material witness was to be preserved.

However, when Congress repealed sections 657 and 659 in a general revision of Title 18 in 1948, there is a strong suggestion that Congress thought the repealed provisions had been superseded by the new Rules of Criminal Procedure. *See* H.Rep.No.304, 84th Cong., 1st Sess. 9 (1947).

From this statutory and legislative history the following conclusions can fairly be drawn. The uninterrupted existence from 1789 to 1948 of legislative authority to arrest and detain material witnesses does not appear to have been broken by the repeal in 1948 of sections 657 and 659. Not only did Congress intimate that the repealed sections had been superseded by the new Rules of Criminal Procedure, but it also did not otherwise manifest a legislative intent to abolish the long-standing authority to arrest material witnesses. The more reasonable conclusion is that with the enactment of Rule 46(b) the revisors of Title 18 considered sections 657 and 659 to be mere redundancies. The power to arrest material witnesses necessarily arises by implication from Rule 46(b), as well as from § 3149.

This is consonant with the long established rule of English Law, in ef-

---

5. § 657:

"Any judge or other officer who may be authorized to arrest and imprison or bail persons charged with any crime or offense against the United States may, at the hearing of any such charge, require of any witness produced against the prisoner, on pain of imprisonment, a recognizance, with or without sureties, in his discretion, for his appearance to testify in the case. And where the crime or offense is charged to have been committed on the high seas, or elsewhere within the admiralty and maritime jurisdiction of the United States, he may, in his discretion, require a like recognizance, with such sureties as he may deem necessary, of any witness produced in behalf of the accused, whose testimony in his opinion is important, and is in danger of being otherwise lost."

§ 659:

"Any judge of the United States, on the application of a district attorney, and on being satisfied by proof that the testimony of any person is competent and will be necessary on the trial of any criminal proceeding in which the United States are parties or are interested, may compel such person to give recognizance, with or without sureties, at his discretion, to appear to testify therein; and, for that purpose, may issue a warrant against such person, under his hand, with or without seal, directed to the marshal or other officer authorized to execute process in behalf of the United States, to arrest and bring before him such person. If the person so arrested neglects or refuses to give recognizance in the manner required, the judge may issue a warrant of commitment against him, and the officer shall convey him to the prison mentioned therein. And the said person shall remain in confinement until he is removed to the court for the purpose of giving his testimony, or until he gives the recognizance required by said judge."

fect when the United States became a nation:

> "You must know that all subjects, without distinction of degrees, owe to the king tribute and service, not only of their deed and hand, but of their knowledge and discovery." Sir Francis Bacon in the Countess of Shrewsbury's Trial, 2 How.St.Tr. 769, 778 (1612).

The Supreme Court has stated that the "duty to disclose knowledge of crime * * * is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness." Stein v. New York, 1953, 346 U.S. 156, 184, 73 S.Ct. 1077, 1092, 97 L.Ed. 1522.

Every state now provides by statute for some form of witness detention. See Carlson, Jailing the Innocent: The Plight of the Material Witness, 55 Iowa L.Rev. 1, 20–25 (1969). Of the state courts that have considered the question, a majority have held that in the absence of statutory authority there is no common-law power to detain witnesses before disobedience of a subpoena. *See* State v. Hand, 1968, 101 N.J.Super. 43, 51, 242 A.2d 888, 892; Little v. Territory, 1911, 28 Okl. 467, 114 P. 699; Bates v. Kitchel, 1910, 160 Mich. 402, 407, 125 N.W. 684, 686; Comfort v. Kittle, 1890, 81 Iowa 179, 46 N.W. 988; Bickley v. Commonwealth, 1829, 25 Ky. (2 J.J. Mar.) 572. *Contra,* Crosby v. Potts, 1910, 8 Ga.App. 463, 69 S.E. 582.

■ The Government does not argue that the power to detain material witnesses is an inherent part of a court's power to compel the attendance of witnesses. We do not purport to decide that question. We only hold that the power to arrest and detain is fairly inferable from § 3149 and Rule 46(b).

**B.** *Grand Jury Proceeding as "Criminal Proceeding."*

Both § 3149 and Rule 46(b) apply expressly to "any criminal proceeding." Bacon argues that a grand jury investigation is not a "criminal proceeding."

The term "criminal proceeding," absent a clear context, is ambiguous.

Among the courts that have wrestled with its meaning in various contexts, there is a division of opinion as to whether grand jury investigations are included. See cases collected in United States v. Thompson, 2 Cir., 1963, 319 F.2d 665, 668.

Unfortunately, the Rules of Criminal Procedure nowhere give precise definition to the term "criminal proceeding." Rule 54, which governs the application of and exceptions to the Rules, neither expressly includes nor excludes grand jury investigations. The Notes of the Advisory Committee provide no additional guidance.

■■ However, one of the Congressional acts that authorized the Rules of Criminal Procedure does offer some guidance.

> "The Supreme Court of the United States shall have the power to prescribe, from time to time, rules of pleading, practice, and procedure with respect *to any or all proceedings prior to and including verdict,* or finding of guilty or not guilty by the court if a jury has been waived, or plea of guilty, in criminal cases * * *." 18 U.S.C. § 3771, based on Act of June 29, 1940, ch. 445, 54 Stat. 688, 18 U.S.C. former § 687. (Emphasis added.)

The emphasized phrase, *any or all proceedings prior to and including verdict,* reaches far enough to include grand jury investigations. The Fifth Amendment guarantees the right to indictment by grand jury "for a capital, or otherwise infamous crime." The grand jury carries out its investigative function with the specific purpose of determining whether probable cause exists to institute criminal prosecutions. *See* Costello v. United States, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397. Its decision to return an indictment throws the full weight of the criminal process against persons suspected of crime. It is incongruous to say that a proceeding before the body charged by the Constitution with initiating criminal prosecutions does not amount to a pro-

ceeding in a criminal case prior to verdict. The Supreme Court apparently agreed with this proposition when it stated that a grand jury investigation is a "criminal case" for purposes of extending the Fifth Amendment privilege against self-incrimination to grand jury witnesses. *See* Counselman v. Hitchcock, 1892, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110. Thus, the Statutory authorization for the Rules extends to the promulgation of rules governing the grand jury.

There remains the question whether the Supreme Court has exercised to the fullest the authority granted. The Rules themselves indicate that the Court did. Rule 2 states that "[t]hese rules are intended to provide for the just determination of *every criminal proceeding*." (Emphasis added.) Rule 6 authorizes the summoning of grand juries and establishes procedures to govern their operation, thereby evidencing the Court's belief that grand jury investigations are criminal proceedings properly cognizable by the Rules of Criminal Procedure. Finally, Rule 17, which governs the subpoena power in criminal proceedings, was clearly intended to apply not only to criminal trials but to grand jury investigations as well. Advisory Committee Note to Rule 20 (renumbered 17), Federal Rules of Criminal Procedure: Preliminary Draft 107 (1943).

Bacon relies heavily on United States v. Thompson, *supra*, 2 Cir., 1963, 319 F.2d 665, to support her contention that a grand jury investigation is not a criminal proceeding. *Thompson* did not involve Rule 46(b) or § 3149, but dealt instead with the Walsh Act, 28 U.S.C. § 1783 et seq., which gave the district courts the power to issue subpoenas to witnesses outside the United States. However, the legislative histories of the two sets of provisions bear a remarkable resemblance to one another. Both the provisions as originally enacted extended the subpoena power only to the trial stage of a criminal action. *See* 28 U.S.C. former § 712; 28 U.S.C. former §§ 657, 659. In both sets of provisions the phrase "criminal proceeding" was substituted in the 1948 revision and codification of the Judicial Code. The majority in *Thompson* could find no intent on the part of the revisors to enlarge the scope of the Walsh Act, and the Advisory Committee Note to Rule 46(b) expressly states that the Rule is "substantially a restatement of existing law." On the basis of legislative history the majority in *Thompson* concluded that the phrase "criminal proceeding" did not include grand jury investigations. A similar result would seem to be required in the present case if *Thompson* is followed.

We are unable to accept the reasoning of the majority in *Thompson*, but agree with the dissenting opinion in that case, 319 F.2d at 671–673. Both the Walsh Act and Rule 46(b) are designed to facilitate the compulsory disclosure of information in order to enhance the enforcement of the criminal law, and attendance of witnesses at a grand jury is just as essential to the achievement of this purpose as their attendance at a criminal trial. The dissenting opinion in Thompson warned that the courts "should be hesitant to attribute to Congress an intention to promulgate a statute so designed that federal law-enforcement agencies can be frustrated by the mere withdrawal beyond our territorial limits of individuals whose testimony is indispensable to the securing of a criminal indictment." *Id.* at 671. In the present case the court should likewise be hesitant to say that the Supreme Court intended Rule 46(b) to be so designed that federal law-enforcement agencies can be frustrated by the flight of a prospective witness whose testimony is indispensable to the securing of an indictment.

Furthermore, the disavowal by the Advisory Committee of any intent to alter existing law does not foreclose a consideration of what they did in fact. Rule 46(b) contains a number of material changes in language from its predecessors. Former § 657 was limited to witnesses produced against the accused, ex-

cept in admiralty cases, but Rule 46(b) contains no such limitation. Rule 46(b) also adds the requirements of materiality and impracticability of subpoena not found in former § 657.

Taken as a whole the Rules are clearly broad enough in scope to encompass grand jury investigations. In view of this fact the more convincing interpretation of the words "criminal proceeding" in Rule 46(b) is that those words were intended to give that Rule a scope as broad as the Rules themselves. The drafters of the Rules demonstrated their ability to narrow the scope of specific Rules where they wanted to. (*E. g.,* Rules 43 and 44(a).) Words such as those used in superseded sections 657 and 659 could have been used to limit Rule 46(b), but they were not. The most logical inference to be drawn is that the drafters did not want Rule 46(b) to be so limited.

Finally, as noted above, Rule 17, which provides for the issuance of subpoena, was intended to apply to the grand jury as well as actual trials. It is unlikely that the drafters would provide for the arrest and detention of a material witness for a trial, but not for a grand jury. To hold that the Rules do not provide such alternative process for grand jury investigations would be to countenance "unjustifiable expense and delay" at the investigatory and accusatory stages of the criminal process contrary to the clear mandate of Rule 2.

### C. *Constitutionality.*

Bacon further claims that arrest and detention of material witnesses, not suspected of wrongdoing, is forbidden by the Constitution. She does not, however, cite us to any provision of the Constitution which supports her claim, nor does she refer to any case authority. Because this issue has been presented in a perfunctory manner, without adequate briefing and argument, we decline to rule upon it at this time. However, we note that the Supreme Court has considered the problem in the context of a Senate investigation into the validity of an election. In Barry v. United States ex rel. Cunningham, 1929, 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867, the Court held that the Senate has the power, incident to its constitutional authority to judge the elections of its members, to compel the attendance of witnesses without the aid of a statute and to issue an arrest warrant for that purpose prior to the disobedience of a subpoena. In the course of its opinion, the Court analogized to 18 U.S.C. former § 659 and stated, "[t]he constitutionality of this statute apparently has never been doubted." *Id.* at 617, 49 S.Ct. at 456.

### III. *Validity of the Arrest Warrant and Custody Order.*

#### A. *The Arrest Warrant—Probable Cause.*

The material witness arrest warrant issued by Judge Boldt on April 22, 1971, ordered the federal authorities to arrest Bacon, directed them to bring her to Seattle in their custody, and imposed bail in the amount of $100,000.00 as a condition of Bacon's release from custody. Bacon argues that the basis for the warrant, the material witness complaint,[6] lacks statutory and constitution-

---

6. The "Material Witness Complaint" reads as follows:
 "The undersigned complainant being duly sworn states:
 That LESLIE BACON is a necessary and material witness for the United States of America in a proceeding before the Grand Jury in the Western District of Washington in Seattle, Washington.
 That representatives of the Internal Security Division of the Department of Justice in Washington, D. C., have informed this affiant that said LESLIE BACON has personal knowledge of the circumstances and persons responsible for violations of the laws of the United States of America and that said LESLIE BACON will avoid process if at all possible, and that said LESLIE BACON will flee the jurisdiction of this Court and the United States of America in order to avoid giving her information to the Grand Jury, and that a

al sufficiency. The Government responds that no showing of probable cause is necessary and that the allegations in the complaint therefore suffice under Rule 46(b) and § 3149. The Government reaches this conclusion by contrasting Rule 46(b) with Rules 4(a) (arrest warrant) and 41(c) (search warrant), both of which expressly require that a judicial officer find probable cause for issuing the respective warrants. Rule 46(b) contains no such provision. This distinction, however, does not provide a basis sufficient to insulate the procedure by which a material witness is taken into custody from the command of the Fourth Amendment.[7] *Cf.* Camara v. Municipal Court, 1967, 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930. Thus, it follows that Bacon's arrest and detention must be based on probable cause. Terry v. Ohio, 1968, 392 U.S. 1, 21 n. 18, 88 S.Ct. 1868, 20 L.Ed.2d 889. Furthermore, although neither Rule 46(b) nor § 3149 explicitly says so, a judicial officer must be provided with information of sufficient specificity and apparent reliability to permit him to determine independently the existence *vel non* of probable cause. *See* United States v. Harris, 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (Harlan, J., dissenting); *cf.* Johnson v. United States, 1948, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436.

But this determination only initiates the inquiry. In several situations the Supreme Court has either specifically held or strongly intimated that a search or seizure based on less than traditional probable cause will satisfy the dictates of the Fourth Amendment. *See* Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Davis v. Mississippi, 1969, 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed. 2d 676; Camara v. Municipal Court, *supra.* None of these cases, however, can justify our discarding the requirement that probable cause be shown for the arrest and detention of a material witness. *Terry* and *Davis* involved brief detention of suspects for questioning or to obtain physical evidence. *Camara* did not involve arrest or detention. The arrest and detention to which Bacon was subjected is just as much of an invasion of the security of her person as if she had been arrested on a criminal charge. We think it clear that *Terry* and *Davis* establish the proposition that an "arrest" —a "seizure" of the person—within the meaning of the Fourth Amendment does not coincide with "a trip to the station house and prosecution for crime—'arrests' in traditional terminology." Terry v. Ohio, 392 U.S. at 16, 88 S.Ct. at 1877. Under those cases and the Fourth Amendment, the essential element is the physical restraint placed upon the person, not the purpose behind the restraint.

Such an arrest as we have here, when based on a showing of less than probable cause, has no history of judicial or public acceptance. Furthermore, a requirement of probable cause in this case does not conflict with any legitimate public interest. The public interest will be protected if grand jury witnesses come forth to provide testimony concerning the possible commission of crimes. The requirement that probable cause be shown in no way

subpoena will not be effective to insure her attendance upon the Grand Jury, and that it is necessary that said LESLIE BACON be compelled to give bail in order to insure her appearance as a witness before the Grand Jury.

/s/ STAN PITKIN
United States Attorney

SWORN TO BEFORE ME and subscribed in my presence, April 22, 1971.

/s/ George H. Boldt
UNITED STATES DISTRICT JUDGE."

---

7. The Supreme Court has held that arrests of suspects by law enforcement officers are seizures of the person within the meaning of the Fourth Amendment. Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Albrecht v. United States, 1927, 273 U.S. 1, 5, 47 S.Ct. 250, 71 L.Ed. 505.

adversely affects that interest. The material witness will generally be unaware of the *ex parte* application for a warrant, and will therefore not flee to avoid arrest. We do not decide whether, if ever, a material witness may be arrested and detained with probable cause but without a warrant.

■ Rule 46(b) and § 3149 provide specific criteria for probable cause. *Cf.* Giordenello v. United States, 1958, 357 U.S. 480, 485, 78 S.Ct. 1245, 2 L.Ed.2d 1503. Before a material witness arrest warrant may issue, the judicial officer must have probable cause to believe (1) "that the testimony of a person is material" and (2) "that it may become impracticable to secure his presence by subpoena." These requirements are reasonable, and if they are met, an arrest warrant may issue.

■ In the case of a grand jury proceeding, we think that a mere statement by a responsible official, such as the United States Attorney, is sufficient to satisfy criterion (1). This is because of the special function of the grand jury; it has exceedingly broad powers of investigation, and its proceedings are secret. In re Dymo Industries, Inc., C.D. Cal., 1969, 300 F.Supp. 532, 533, aff'd for the reasons given by the district court, United States v. Dymo Industries, Inc., 9 Cir., 1969, 418 F.2d 500, where we held that a showing of good cause is not required for the issuance of a grand jury subpoena *duces tecum*. *Cf.* United States v. United States District Court, 4 Cir., 1956, 238 F.2d 713, 719–720. We have also held that where a showing is being made in support of a proposed grant of immunity to a grand jury witness, the mere assertion by the United States Attorney that the investigation involves the applicable statute is enough. Russo v. United States, *supra*, 9 Cir., 1971, 448 F.2d 369, and cases cited. These principles, we think, are applicable here. We express no opinion as to what showing as to materiality must be made in the case of a witness who is to testify at a trial.

On the other hand, we think that, as to criterion (2), sufficient facts must be shown to give the judicial officer probable cause to believe that it may be impracticable to secure the presence of the witness by subpoena. Mere assertion will not do.

■ The complaint, on the basis of which Judge Boldt issued the warrant for Bacon's arrest, failed to meet this standard. It contained none of the underlying facts or circumstances from which the judicial officer could find probable cause. Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. *See also* United States v. Harris, 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; Whiteley v. Warden, 1971, 401 U.S. 560, at 564–565, 91 S.Ct. 1031, 28 L.Ed.2d 306; Nathanson v. United States, 1933, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159. As a basis for Bacon's arrest the warrant was invalid.

### B. *Commitment to the Custody of the United States Marshal.*

Following a hearing on April 28, 1971, Judge Sirica of the United States District Court for the District of Columbia denied Bacon's motions to quash the material witness arrest warrant and reduce the amount of bail. Bacon was remanded to the custody of the Marshal and transported to Seattle. The evidence taken during the hearing before Judge Sirica was made part of the record in the proceeding before the District Court for the Western District of Washington. The Government contends that if probable cause was shown at the hearing before Judge Sirica, Bacon's continued detention as a material witness under Rule 46(b) and § 3149 is proper even though the original arrest may have been unlawful. We agree.

■ A court may retain jurisdiction over a person unlawfully arrested, not only when that person makes a subsequent voluntary appearance, Albrecht v. United States, 1927, 273 U.S. 1, 8, 47 S.Ct. 250, 71 L.Ed. 505, but also when the person is brought before

it by forcible abduction. Frisbie v. Collins, 1952, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541; Pettibone v. Nichols, 1906, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148; Ker v. Illinois, 1886, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; Charron v. United States, 9 Cir., 1969, 412 F.2d 657, 659–660. Although *Frisbie* and *Ker* involved the arrest and subsequent conviction of persons held to answer for crimes, the principle of these cases applies with equal force to arrests of material witnesses. Bacon was before the court, and it could order continued detention if probable cause was then shown.

 Judge Sirica received evidence on the issue of probable cause, and denied Bacon's motion to quash the arrest warrant. If that evidence was sufficient, her continued detention under the warrant is valid.

The evidence adduced before Judge Sirica consisted largely of testimony given by Daniel Mahan, a special agent of the F.B.I., who was one of the officers who arrested Bacon in Washington, D. C. Much of Mahan's testimony was based on information provided by a confidential source, S–1, an employee of an unidentified law enforcement agency, who reported through his supervisor to Mahan. The information that Mahan received from S–1 was hearsay, and Mahan could not corroborate the information through his own personal observations. A finding of probable cause must presuppose evidence from which the judge could reasonably find that S–1 was a credible person. Mahan testified that he had personal knowledge of agency records that corroborated S–1's information on 10 of 50 previous occasions in which S–1 had provided information to his supervisor. The information reported by S–1 on those 50 occasions related to "the whereabouts of certain individuals," "the travels of certain individuals," and the "whereabouts of certain items and the travel of certain motor vehicles." These facts suffice to support a finding that S–1 was reasonably likely to be a credible person. In addition, S–1 re-

ported that his information was based upon his own personal knowledge, gained through conversations with Bacon and her associates. This provides sufficient support for a finding that S–1's information, as far at it goes, is likely to be reliable. *See generally* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. Thus, the judge could properly accept as true the facts reported by S–1.

The question then becomes whether those facts are "sufficient in themselves to warrant a man of reasonable caution in the belief" that the section 3149 and Rule 46(b) requirement of impracticability was met. *See* Draper v. United States, 1959, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327; Carroll v. United States, 1925, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543. We hold that they are not.

S–1 reported to his supervisor that Bacon would not comply with a subpoena. This conclusion will not support a finding by the judicial officer. The fact that Bacon had access to large sums of money is at best remotely relevant to her possible recalcitrance. There was no showing of past attempts by Bacon to evade judicial process, nor of past clandestine travels by Bacon.

Thus, any finding of impracticability must necessarily rest on two allegations: (1) that Bacon had personal contact with fugitives from justice, and (2) that Bacon was captured on an adjoining rooftop. The first allegation, plus her access to money, at most tends to show that *if* Bacon wished to flee, she might be able to do so successfully. It does not support the conclusion that Bacon would be *likely* to flee or go underground. Bacon's capture on an adjoining rooftop is a fact of more substance. From the fact that Bacon was arrested on an adjoining rooftop the inference can be drawn that Bacon wished to avoid apprehension. This might lead to the further inference that she would be equally

disinclined to obey a subpoena to testify before the Seattle grand jury. However, balanced against other evidence in the record, this incident does not provide sufficient support for the second inference.

Bacon's attorney at the hearing before Judge Sirica stated:

"[S]he [Bacon] had no idea why they were after her and what was happening other than the FBI broke down the front door of the house where she was staying and she was frightened by that. I instructed her to stay where she was, to not make any effort to contact the authorities, that I would contact Mr. Sullivan and voluntarily produce her. Ten minutes later, the FBI again came back to that house and she got scared and they arrested her on the roof of the house at that time. So she was acting personally to my instructions; I had told her to remain aloof at that point until I could voluntarily turn her in."

Such a situation differs greatly from that in which Bacon would have found herself had she been served with a subpoena. She would then have had an opportunity to reflect on her obligation to obey the process, free from the fear of imminent arrest by pursuing officers. This opportunity is granted to most witnesses, and the showing in the present case does not justify denying Bacon the same opportunity. Thus, the showing failed to support probable cause to believe that Bacon could not practicably be brought before the grand jury by a subpoena.

It follows that Judge Sirica's order denying the motion to quash the arrest warrant was invalid. No additional evidence was produced at the hearing before Judge Boldt on Bacon's petition for a writ of habeas corpus. Because the writ was erroneously denied, we need not consider the validity of the order fixing bail. It must fall with the arrest warrant.

The order is reversed, with directions to quash the warrant of arrest, including the order fixing bail.