Youngstown Steel Door Co., Appellant, *v.* Kosydar, Appellee.

[Cite as Youngstown Co. v. Kosydar
(1973), 33 Ohio App. 2d 277.]

(No. 32121—Decided March 29, 1973.)

*Messrs. Arter & Hadden* and *Mr. Robert E. Glaser,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mrs. Maryann B. Gall,* for appellee.

Silbert, J. This is an appeal from a decision of the Board of Tax Appeals. Appellant assigns one error for our consideration: that

"The finding of the Board of Tax Appeals that the statements made in [a] letter dated July 22, 1971, from The Youngstown Steel Door Company * * * to the Tax Commissioner were not verified under oath or affirmation was unlawful and unreasonable."

On June 22, 1971, appellee issued a combined sales and use tax assessment against appellant. Within 30 days after

notice of the assessment was received, and on July 22, 1971, appellant's agent sent a letter to the appellee (received July 23, 1971) requesting a hearing, setting out several grounds on which appellant wished to contest the assessment made, and closing with the following:

"Under the penalties of perjury, I declare that I have been authorized by the above named corporation to make this petition, that to the best of my knowledge and belief the statements made therein are true and correct, and that I am an officer of the company."

The letter was signed by Bernard H. Scheidler, treasurer of the appellant. Appellee refused to treat the letter as a petition, and returned it to the appellant along with a cover letter and what appellee considers the proper form for such a petition, which appellant duly filled out and resubmitted. The latter was disallowed as not being timely filed. On appeal the Board treated both of the alleged petitions as consolidated into one appeal and we will do likewise. For some tax purposes, the form of the letter would have been sufficient. *Cf.,* R. C. 5703.25.

But R. C. 5739.13 provides, in material part, that

"Unless the vendor or consumer * * * files within thirty days after service * * * a petition in writing, *verified under oath* by said vendor, consumer, or his authorized agent, having knowledge of the facts, setting forth with particularity the items of said assessment objected to, together with the reasons for such objections, said assessment shall become conclusive and the amount thereof shall be due and payable * * *." (Emphasis added.)

The sole question presented is whether or not the form of the letter is sufficient—specifically, whether or not it can be treated as "verified under oath" where the letter was not notarized and it does not appear that it was signed in the presence of any person authorized to take oaths, *or anyone else.* We hold that it is not.

At the outset it is well to note that a certain amount of confusion inures from the common association of the substance of a verification with one particular form of verification, *viz.:* the bar has become accustomed to using the term

to refer to a separate legal paper incorporating and satisfying the requirements of code pleading. In fact the Code of Civil Procedure used the term more narrowly. R. C. 2309.46, since subplanted by the Civil Rules, and repealed. The common law understood it only as a statement that one was prepared to prove the truth of one's own declarations, and the term "to verify" means only to separately check or affirm the validity of what has been declared. Blackstone, Commentaries on the Laws of England (1771), Book III, ch. 20, 312; Oxford English Dictionary, v. 10, pt. 2, 128.

We agree that no particular form attaches to the term "oath" and that an affirmation of the truth of one's declaration would be quite sufficient in a proper case. R. C. 3.20; R. C. 3.21. But the verification is to be made "under oath," language which must be construed as adding something to the meaning of the word "verified" standing alone.

An oath is "[a] solemn or formal appeal to God * * * in witness of the truth of a statement, * * * a statement * * * corroborated by such an appeal * * *;" an affirmation, "[a] formal and solemn declaration, having the same weight and invested with the same responsibilities as an oath, by persons who conscientiously decline to take an oath." Oxford English Dictionary, v. 7, pt. 1, 7, and v. 1, pt. 1, 157.

In general usage the phrase "under oath" connotes something of the notion that the declarant is first sworn, or at least, that the oath is administered by someone. That an oath is to be administered has been generally assumed. *Cf., Warwick* v. *State* (1874), 25 Ohio St. 21, *State* v. *Jackson* (1880), 36 Ohio St. 281, and *State* v. *Townley* (1902), 67 Ohio St. 21. The General Assembly has indulged that assumption in creating the office of notary public, and in empowering those who hold that office to "administer oaths required or authorized by law." R. C. 147.07. Generally, an oath falsely sworn is subject to punishment for perjury only if "lawfully administered." R. C. 2917.25.

We recognize that any false or fraudulent statement made in any document authorized or required to be filed with the Department of Taxation is subject to criminal sanctions. R. C. 5703.26; R. C. 5703.99. But whether it is al-

ways necessary that an oath be administered by someone legally empowered to take oaths we need not now decide. In our view, what sets apart an oath or affirmation is its solemn contemporaneous publication, before God, or in temporal affairs, before one's fellow man. Verification itself requires a formal declaration. Verification under oath bespeaks some further formal act or presence calculated to bring to bear upon the declarant's conscience the full meaning of what he does. *Cf.*, Anno., 51 A. L. R. 840.

"A wide scope, a large liberty, is * * * given to the form of the oath, but some form remains essential. Something must be present to distinguish between the oath and the bare assertion." *O'Reilly* v. *People* (1881), 86 N. Y. 154, 159; *cf.*, *Cincinnati Finance Co.* v. *First Discount Corp.* (Hamilton Co., 1938), 59 Ohio App. 131.

It was at least necessary that Mr. Scheidler call upon someone to bear witness to the fact of his declaration—that he do some public act indicative of his solemn purpose. The burden of proof fell to the appellant. But for all the record shows, Mr. Scheidler signed the letter as he would have signed any routine business communication. We do not even know that he mailed it personally. Appellant waived a hearing before the Board of Tax Appeals. Thus it did not avail itself of the opportunity to present evidence as to just what was done.

Denying any party an opportunity to be heard is painful, at best. We do so only reluctantly. Due process generally requires that notice and a hearing be afforded whenever substantial rights may be affected. But the General Assembly has the responsibility and the power to set reasonable rules of procedure and jurisdictional prerequisites for such hearings. The state has a proper interest in the speedy and final determination of tax assessment questions. A requirement that a petition be verified under oath is not an unreasonable one.

The chronology of events here is similar to that in *Leiphart Lincoln-Mercury, Inc.*, v. *Bowers* (Lucas Co., 1958), 107 Ohio App. 259. In that case appellant sent a letter to the Tax Commissioner within but toward the end of the

thirty day statutory period setting out facts which the office manager and bookkeeper thought would clear up the "discrepancy" reflected by the assessment, and including a check for that portion of the assessment which was not contested. Appellee duly forwarded a copy of its form for a petition for reassessment with a cover letter indicating that it should be filled out and returned before the statutory period had expired. As in the case at bar, appellant filled out the form and returned it only after the thirty days had run. In his opinion, Judge Smith pointed out quite correctly that:

"The Department of Taxation is an administrative agency and is a tribunal of limited jurisdiction. Administrative officers and agencies have no common-law or inherent powers other than have been granted to or conferred on them by law. As a creature of statute, * * * [appellee] is without power to exercise any jurisdiction beyond that conferred by statute. The applicable sections of the Revised Code set out above are statutory, jurisdictional prerequisites as to the time for doing an act, and without compliance therewith the administrative agency is without power or authority. *The jurisdiction of such officials and tribunals must be invoked in the manner prescribed by statute, and their proceedings must be in accordance with valid statutory requirements. They * * * can not dispense with the essential forms of procedure which condition their statutory powers, or have been prescribed for the purpose of investing them with power to act." Id.,* 265; emphasis added; citations omitted.

The court held that jurisdiction had not been established. As the court also noted, the appellant had been given ample notice of its right to a hearing, but disregarded the warnings given. The same is true here.

Appellee's notice of assessment contained the following, set out conspicuously in upper-case type:

"If this assessment is not paid *or contested in the manner prescribed by law within 30 days after service thereof,* judgment will be entered in the court of common pleas and the claim certified to the attorney general for collection." (Emphasis added.)

At the bottom of the page, under the bold-face, upper-case heading, "Pertinent Information," there appears the following:

"If the assessee wishes to present evidence that all or a portion of the tax or delinquency charge assessment is erroneous, he *must* request a hearing by filing a Petition for Reassessment. *This petition must be received by the Tax Commissioner within 30 days after the date of service of this form.* * * *. *A Petition for Reassessment will be furnished upon request.*

" * * *.

"Portions of the Ohio Revised Code which are pertinent to this assessment are reprinted on the reverse side of this sheet for your information."

(All emphasis added.)

The form as prescribed by the Tax Commissioner provides for a sworn verification before a notary public. Appellee does not here contend that a Petition for Reassessment is only valid if made upon the form prescribed by him. Nor does such a petition actually have to be delivered into the hands of the Department of Taxation within the thirty day period, provided it is posted by registered or certified mail within that time. *State, ex rel. Sherrick*, v. *Peck* (1952), 158 Ohio St. 122.

Necessarily the instructions included on the notice of assessment had to be brief. Where they are perhaps not a full statement of the law, they err on the side of safety to the taxpayer. Appellant was notified that it had a right to a hearing. It was warned that it should file a petition seeking a hearing and should use a form which would be provided by the Department of Taxation. Had it done so, it would surely not now be in its present difficulty. Ordinary prudence would have dicated that it either follow the form prescribed or seek the assistance of counsel. If it decided it would act as its own counsel, and frame its own form of petition, it surely undertook the risk that it might fail to satisfy the formal requirements imposed by the statute. It has nowhere to look to assign blame but to itself.

Appellant's assignment of error must be, and is over-

ruled. The judgment of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

KRENZLER and DAY, JJ., concur.