[Cite as *State v. Eatmon*, 2020-Ohio-3592.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,            :

    Plaintiff-Appellant,      :

                                No. 108786

    v.                       :

DARNELL EATMON, JR.,     :

    Defendant-Appellee.     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-623818-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and John R. Kosko, Assistant Prosecuting Attorney, *for appellant.*

Mark A. Stanton, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, *for appellee.*

MARY EILEEN KILBANE, J.:

{¶ 1} Plaintiff-appellant, the state of Ohio ("the state"), appeals from the trial court's judgment dismissing the indictment against defendant-appellee,

Darnell Eatmon, Jr. ("Eatmon"). The dismissal was without prejudice. For the reasons that follow, we affirm the dismissal.

## I.  FACTUAL BACKGROUND

{¶ 2} On December 13, 2017, Eatmon, 23 years old at the time, was indicted on five counts for offenses dated September 9, 2017. Count 1 was for attempted murder under R.C. 2923.02 and 2903.02(A), a first-degree felony, with one-year, three-year, and 54-month firearm specifications. Count 2 was for felonious assault under R.C. 2903.11(A)(1), a second-degree felony, with a one-year, 18-month, and three-year firearm specification. Count 3 was for felonious assault under R.C. 2903.11(A)(2), a second-degree felony, with a one-year, 18-month, and three-year firearm specification. Count 4 was for discharge of firearm on or near prohibited premises under R.C. 2923.162(A)(3), a first-degree felony, with a one-year, 18-month, and three-year firearm specification. Count 5 was for having weapons while under disability under R.C. 2923.13(A)(3), a third-degree felony.

{¶ 3} The indictment related to an incident involving Eatmon and Khaalis Miller ("Miller"), age 40. Eatmon is the nephew of Miller. The state alleges that Eatmon shot Miller multiple times on September 9, 2017, around 6:57 p.m. near 1239 East 124th Street in Cleveland, Ohio after a heated argument. Miller underwent surgery for his injuries. Two days after the incident, on September 11, 2017, Miller's mother, Lisa Ford ("Ford"), called the Cleveland Police Department and reported that Eatmon had shot Miller and that Miller was currently recovering in the hospital. Afterwards, Miller cooperated with the police and identified Eatmon

out of a photo lineup. Ford was also present during the lineup and cooperated with police at the time. She even offered to put the police in touch with an eyewitness to the incident. The state later sought to designate Miller and Ford as material witnesses.

### A. Attempts to contact Miller

{¶ 4} The state represented the following facts regarding its attempts to contact Miller to secure his appearance as a witness. The state called Miller on March 12, 2019. No one answered, but the state left a voicemail message and requested a return call. Also, on March 12, 2019, the state mailed written correspondence to Miller requesting a return phone call.

{¶ 5} The state's investigator made several phone calls and travelled to four addresses to attempt to contact Miller. The first address was in East Cleveland. No one answered the door, so the investigator left written correspondence in a mailbox at a residence in East Cleveland. The mailbox contained mail addressed to Miller and another female. The second address was in Euclid. The current resident stated that she had lived there for three years and did not know Miller. The third address was also in Euclid. No one answered the door, so the investigator left a letter.

{¶ 6} The last address the investigator visited was an apartment in Painesville. A woman answered the door and said she did not know Miller and that he did not live there. Later, the apartment manager called the investigator and confirmed that the apartment is rented to a "Miller" and that one of the occupants is a Khaalis Miller.

{¶ 7} On March 20, 2019, the state wrote a letter to Miller at the Painesville address. The letter enclosed a copy of Miller's subpoena for appearance at a pretrial on April 3, 2019. Meanwhile, the state attempted to reach Miller by calling several phone numbers that appeared on his medical records. Miller did not appear at the April 3, 2019 pretrial. On April 4, 2019, the state sent Miller a message via Facebook, but did not receive a response.

{¶ 8} On April 30, 2019, the court held a hearing before denying the state's motions for recognizance and/or commitment of a material witness that the state had filed on April 26, 2019, for both Miller and Ford. The state attempted to call Miller the morning of the hearing at a number his mother provided. A male answered the phone and replied "yes" when the caller asked for Mr. Miller. However, after the prosecutor introduced herself, the male stated that he would need to take a message because Miller was not there. The state never received a return phone call.

{¶ 9} The state called the same number on May 3 and 9, 2019, to attempt to reach Miller. Both times, an automated message stated that the phone was not accepting calls. On May 9, 2019, the state moved for a continuance of the May 15 trial, stating that it had not yet secured the presence of material witnesses for the state's case-in-chief. The state then filed new motions for material witnesses on May 10, 2019. On May 13, 2019, the court granted the state's request for a continuance and reset trial to July 9, 2019, but did not issue material witness warrants.

Thereafter, the state only attempted to contact Miller through written correspondence. Miller was not personally served with a subpoena.

### B. Attempts to contact Ford

{¶ 10} The state represented the following facts regarding its attempts to contact Ford to secure her appearance as a witness. On April 2, 2019, the state attempted to contact Ford using one of the phone numbers found on Miller's medical records. An automated message stated that the call could not be completed as dialed. On April 4, 2019, the state attempted to call Ford's place of employment, but there was no answer and no means to leave a message. The state then sent written correspondence to Ford at her home and work addresses. The state contacted Ford's sister, who said she would have Ford call the prosecuting attorney.

{¶ 11} On April 23, 2019, a Cleveland police detective visited Ford's home and place of employment. No one answered the door at either location. The detective left letters at both places and requested a return call. About thirty minutes after the detective left, Ms. Ford, apparently upset, called the detective, apparently upset, and stated she did not want anything to do with the case and that Miller did not wish to prosecute. She confirmed, however, that Miller lives in Painesville. After obtaining a continuance, the state left subpoenas for Ford's and Miller's appearance at trial at Ford's residence. Ford was not personally served with a subpoena.

## II. PROCEDURAL BACKGROUND

{¶ 12} Eatmon was indicted on December 13, 2017. Trial was originally set for May 15, 2019. The trial court held a pretrial hearing on April 3, 2019. The state

had attempted to call Miller and had mailed a subpoena to him at his Painesville residence for his appearance at the April 3, 2019 hearing, but he failed to appear. The state filed motions for recognizance and/or commitment of a material witness as to Miller and Ford on April 26, 2019. The court denied both motions on May 1, 2019, after a hearing on April 30, 2019. Neither motion contains an affidavit or sworn testimony of the state in support of issuing warrants for Miller or Ford.

{¶ 13} On May 9, 2019, the state moved for a continuance, seeking additional time to secure material witnesses. On May 10, 2019, the state moved to declare Miller and Ford material witnesses. The parties attended a final pretrial on May 13, 2019. The court granted the state's motion for continuance and reset trial for July 9, 2019. On the day of trial, the state orally renewed its motions for recognizance and to declare Miller and Ford material witnesses.

{¶ 14} The trial court asked the state several questions regarding its motion for material witness warrants. The state confirmed that it had not personally served Miller or Ford with subpoenas and that Miller and Ford are adults. The state also informed the court that it did not have knowledge as to whether Miller or Ford had been threatened or were in danger. The state told the court that it was not prepared to proceed without the two witnesses and that it would not voluntarily dismiss. The trial court, after noting that it had already granted the state one continuance, dismissed the indictment without prejudice. The judgment entry denying the state's motion for a material witness warrant and dismissing the case without prejudice stated as follows:

State unable to proceed. State's witnesses failed to appear for trial for a second time. State's motion for a material witness warrant is denied. Case dismissed without prejudice. Defendant ordered released as to this case only.

{¶ 15} Immediately after dismissing the underlying case, the trial court proceeded to sentence Eatmon on another case to which he had entered a guilty plea on May 13, 2019, for three offenses: drug possession under R.C. 2925.11(A), a fifth-degree felony; possessing criminal tools under R.C. 2923.24(A), a fifth-degree felony; and having weapons while under disability under R.C. 2923.13(A)(2), a third-degree felony. He received a concurrent sentence of 11 months on each of the two fifth-degree felonies and 18 months on the third-degree felony.

{¶ 16} This appeal of the dismissal without prejudice follows. The state asserts the following assignment of error:

<u>Assignment of Error No. 1</u>

The trial court abused its discretion in dismissing this case under Crim.R. 48(B) when the Material Witnesses were not present for trial but valid mechanisms existed to compel the Material Witnesses['] presence and testimony.

## III. LAW AND ANALYSIS

{¶ 17} In the state's sole assignment of error, it argues that the trial court erred in dismissing the indictment against Eatmon under Crim.R. 48(B). The assignment of error involves two issues. We first address whether the trial court abused its discretion in denying the state's motions for material witness warrants for Miller and Ford. We find that it did not. Second, we address whether the trial

court abused its discretion in dismissing the indictment without prejudice. We find that it did not.

## A. Standard of Review

{¶ 18} Generally, a court has inherent power to regulate the practice before it and protect the integrity of its proceedings, which includes a court's power to sua sponte dismiss a criminal case. *State v. Hollins*, 8th Dist. Cuyahoga No. 103864, 2016-Ohio-5521, ¶ 16, citing *State v. Busch*, 76 Ohio St.3d 613, 615, 669 N.E.2d 1125 (1996). "We review a trial court's dismissal of criminal charges under Crim.R. 48(B) for abuse of discretion." *Id.* at ¶ 17, citing *Busch* at 616. "An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "An unreasonable decision is one that is unsupported by a sound reasoning process; an arbitrary attitude is an attitude that is without adequate determining principle not governed by any fixed rules or standard; and unconscionable may be defined as affronting the sense of justice, decency, or reasonableness." *Id.*, quoting *State v. Hill*, 10th Dist. Franklin No. AP-177, 2010-Ohio-6121, ¶ 34.

{¶ 19} A request for a continuance to issue a material witness warrant is also reviewed for an abuse of discretion. *State v. Metz*, 8th Dist. Cuyahoga Nos. 107212, 107246, 107259, and 107261, 2019-Ohio-4054, ¶ 86.

## B. Material Witness Warrants

{¶ 20} The state argues that its motion for material witness warrants for Miller and Ford should have been granted and the trial continued for a second time.

We find that the trial court did not abuse its discretion in refusing to issue material witness warrants for Miller or Ford where the state failed to provide sworn affidavits or testimony in support of the warrants demonstrating probable cause that warrants were necessary to procure the witnesses' attendance at trial.

{¶ 21} The state argues that the trial court refused to issue material witness warrants because the state had not obtained personal service on either witness and that its refusal was an abuse of discretion. The state primarily contends that service of a subpoena is not required to issue a material witness warrant and specifically points out that personal service of a subpoena is not required by any the following three statutes: R.C. 2937.16; R.C. 2937.18; and R.C. 2941.48.

{¶ 22} R.C. 2937.16 "When witnesses shall be recognized to appear" provides:

> When an accused enters into a recognizance or is committed in default thereof, the judge or magistrate shall require such witnesses against the prisoner as he finds necessary, to enter into a recognizance to appear and testify before the proper court at a proper time, and not depart from such court without leave. If the judge or magistrate finds it necessary he may require such witnesses to give sufficient surety to appear at such court.

{¶ 23} R.C. 2937.18 "Refusal of witness to enter into a recognizance" provides, in part:

> If a witness ordered to give recognizance fails to comply with such order, the judge or magistrate shall commit him to such custody or open or close detention as may be appropriate under the circumstances, until he complies with the order or is discharged.

{¶ 24} R.C. 2941.48 "Recognizance of witnesses" provides, in part:

In any case pending in the court of common pleas, the court, either before or after indictment, may require any witness designated by the prosecuting attorney to enter into a recognizance, with or without surety, in such sum as the court thinks proper for his appearance to testify in such cause.

{¶ 25} Relying on these three statutes, the state argues that the law does not require that a witness be personally served with a subpoena before a material witness warrant is issued. We agree that those statutes do not require personal service of a subpoena. That does not mean, however, that the trial court abused its discretion by refusing to issue material witness warrants in this case.

{¶ 26} "'A warrant to detain a material witness must be supported by probable cause, supported by oath and affirmation, to believe that the witness is material and that the detention of the witness is necessary to procure her attendance at trial.'" *State v. Hollins*, 8th Dist. Cuyahoga No. 103864, 2016-Ohio-5521, ¶ 24, quoting *State ex rel. Dorsey v. Haines*, 63 Ohio App.3d 580, 581, 579 N.E.2d 541 (2d Dist.1991). Under these facts, the state's failure to obtain personal service contributed to its failure to demonstrate probable cause, by oath or affirmation, that detention was necessary to procure the witnesses' attendance at trial.

{¶ 27} The state largely relies on *Hollins*. In *Hollins*, we found that the trial court abused its discretion in refusing to grant a material witness warrant to the state and dismissing the indictment. Unlike here, the material witness in *Hollins* acknowledged receipt of a subpoena, and, after receiving the subpoena, told the prosecutor that she would not testify, hung up on him, and subsequently refused to answer his calls. *Hollins* at ¶ 25. After the witness received the subpoena and

demonstrated a refusal to cooperate with the prosecutor, she was also personally served with a subpoena for a second trial date and did not appear. *Id.* We found those facts to sufficiently demonstrate that "court intervention was necessary to procure her attendance at trial." *Id.* at ¶ 26.

{¶ 28} Here, we cannot find that the trial court abused its discretion in denying the state's request for material witness warrants. Unlike in *Hollins*, the state's attempts to contact Miller and Ford do not demonstrate probable cause that warrants were necessary to procure their appearances. In nearly seven months between the indictment and trial, the state's only direct contact with the witnesses occurred before residence service of the trial subpoenas, even though the state had been granted a continuance to contact Ford and Miller in May 2019 before the original trial date. After the time for the continuance had passed, on the day of trial, the state struggled to pinpoint what it had done since the continuance to obtain personal service or otherwise directly communicate with Miller and Ford about the trial date.

{¶ 29} By its own summary, the state's attempts to directly contact either witness were limited to phone calls that occurred *before* the continuance was granted and *before* residence service of the trial subpoenas. Unlike the witness in *Hollins*, who stated her refusal to cooperate after acknowledging receipt of a subpoena, Ford's alleged comment to the state that she would not testify and that Miller did not wish to prosecute occurred *before* the state even left a subpoena at Ford's residence. Further, in that same phone call, Ford also demonstrated some

willingness to cooperate by confirming Miller's address for the detective. Accordingly, we do not find it was an abuse of discretion to refuse to issue material witness warrants.

{¶ 30} We have previously distinguished *Hollins* and reasoned that it is not an abuse of discretion to deny a continuance to allow the state to locate a material witness where the state had not yet obtained personal service on the witness. *State v. Metz*, 8th Dist. Cuyahoga Nos. 107212, 107246, 107259, and 107261, 2019-Ohio-4054, ¶ 85. In *Metz*, the trial court offered to grant a continuance before the start of trial to allow the defendants to locate and subpoena their witnesses who they had not yet served. Counsel declined a continuance at the start of trial even though the trial court indicated that it would not grant a recess in the middle of trial to allow defendants time to secure the witnesses. We held:

> On this record, we cannot say the trial court abused its discretion in denying the mid-trial request for a continuance and for a material witness warrant when the defendants had not yet obtained personal service on the witnesses and the court gave the defendants an opportunity to secure the witnesses before trial.

*Metz* at ¶ 89.

{¶ 31} Here, the state was actually granted a continuance before trial, yet still failed to use that time to secure personal service of subpoenas on Miller and Ford or otherwise directly contact the witnesses to sufficiently demonstrate that they would not show up for trial without a warrant. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to issue the requested material witness warrants.

{¶ 32} Furthermore, in *Hollins*, the "state provided a detailed affidavit with its motion" demonstrating probable cause to issue material witness warrants. *Hollins*, 8th Dist. Cuyahoga No. 103864, 2016-Ohio-5521, ¶ 25. Unlike in *Hollins*, the state here did not provide any sworn affidavits with any of its motions. In addition, the state did not provide sworn testimony at the hearing or otherwise. These requirements are not mere procedural technicalities or formalities. Rather, they exist to ensure that people are afforded "'the most fundamental rudiments of constitutional due process.'" *Robinson v. Green*, 7th Dist. Mahoning No. 16 MA 0134, 2016-Ohio-5688, ¶ 9, quoting *Haines*, 63 Ohio App.3d 580, 581 N.E.2d 541 (2d Dist.1991).

### C. Dismissal

{¶ 33} The state also argues that dismissal of the indictment under Crim.R. 48 was an abuse of discretion. The state argues that the indictment was dismissed solely because Miller and Ford were uncooperative and not present at trial. The record demonstrates, however, that the state failed to obtain personal service to compel either witness's attendance at trial and that it admittedly was not prepared to proceed without Miller and Ford after already having been granted an earlier continuance.

{¶ 34} Crim.R. 48(B) provides:

> If the court over objection of the state dismisses an indictment, information, or complaint, it shall state on the record its findings of fact and reasons for the dismissal.

{¶ 35} Dismissal under Crim.R. 48(B) is appropriate if it "'serves the interest of justice.'" *Hollins* at ¶ 16, quoting *Busch,* 76 Ohio St.3d at 615, 669 N.E.2d 1125. In *Hollins*, we found an abuse of discretion where the trial court dismissed an indictment without prejudice and refused to issue a material witness warrant for the victim. *Id.* at ¶ 18. We reasoned that "the trial court dismissed the case solely because [the victim] did not want to cooperate with the prosecution" and should have granted the state's motion for a material witness warrant. *Id.* at ¶ 18 and 20. Here, however, the case was not dismissed solely because the victim did not wish to prosecute. Rather, the record shows that the trial court complied with Crim.R. 48 and its dismissal was not an abuse of discretion.

{¶ 36} Eatmon was indicted on December 13, 2017, and entered custody by March 5, 2019. Eatmon's trial was originally set for May 15, 2019. On May 13, 2019, the trial court granted the state's motion for continuance to give the state more time to secure the appearances of Miller and Ford, its main witnesses for trial. Trial was reset for July 9, 2019, which gave the state nearly eight more weeks to secure its witnesses. Eatmon remained in custody for over four months between March 2019 and July 2019, while the state took no further action to obtain personal service on Miller and Ford.

{¶ 37} The trial court's judgment entry in *Hollins* stated:

> Case is called for trial. Victim did not appear for the second time for trial. The states [sic] motion for material witness warrant is denied. Case is dismissed without prejudice. Defendant ordered released.

*Hollins* at ¶ 12.

{¶ 38} Further, in *Hollins*, the trial court stated:

> This matter will be dismissed without prejudice, which means, Mr. Hollins, at any time if the state — if the victim in this case decides to bring charges, the state of Ohio will be free to bring those charges against you and bring you right back in custody.

*Id.* at ¶ 11.

{¶ 39} In contrast to *Hollins*, the judgment entry dismissing the indictment without prejudice did not rely solely on Miller's or Ford's failure to appear. It stated:

> State unable to proceed. State's witnesses failed to appear for trial for a second time. State's motion for a material witness warrant is denied. Case dismissed without prejudice. Defendant ordered released as to this case only.

{¶ 40} Although the court here noted, as in *Hollins*, that the state's witnesses had not appeared at trial, it first noted that the state was unable to proceed, thus providing a valid basis to dismiss the indictment. Whereas the trial court in *Hollins* based its dismissal on the victim's wish to not prosecute, the trial court here relied on the fact that the prosecution was unable to proceed on the day of trial after it had already been granted a continuance two months earlier:

> COURT: All right. Well, listen. Back in May, I gave you guys a continuance to find your witnesses and get them together. The continuance was at the State's request, and then I set the case for trial again today. You still haven't found your witnesses. They're still not cooperating and that isn't my issue, so I'm not giving you the continuance.
>
> [STATE]: Well, wait a minute. We have found our witnesses. We know where they are.
>
> COURT: All right.
>
> [STATE]: They won't come to court.

COURT: All right. And I'm not issuing a material witness warrant.

[STATE]: Well, we're not ready to proceed.

COURT: I know. So you're going to dismiss or I'm going to dismiss. How do you want it to go?

[STATE]: I'm not dismissing.

COURT: The case is dismissed.

Tr. 22:13-23:14.

{¶ 41} Having reviewed the record, we first find that trial court sufficiently stated its reasons for dismissal pursuant to Crim.R. 48(B). The transcript and judgment entry demonstrate that the court dismissed the case because the state had already been granted a continuance, failed to use that time to attempt secure the appearances of Miller and Ford, and was still not ready to proceed eight weeks later.

{¶ 42} We next find that the dismissal served the interest of justice and, therefore, was not an abuse of discretion. We do not find an abuse of discretion in dismissing an indictment where, as here, the state admitted it was unable to proceed with its case on the day of trial. *See Columbus v. Storey*, 10th Dist. Franklin No. 03AP-743, 2004-Ohio-3377, ¶ 11 ("[W]e conclude that the trial court's dismissal of the case does not constitute an abuse of discretion when the city was unable to proceed with its case.").

{¶ 43} The court held hearings on the state's motions for material witnesses and awarded the state an additional eight weeks to personally contact Miller and Ford and attempt to secure their appearances for trial. The state failed to do so. While the state was given additional time to contact its witnesses, Eatmon sat in

custody for months. Despite the court's generosity in granting a continuance to the state, on the day of trial, the state admitted that it was not prepared to proceed without Miller and Ford. Contrary to the state's assertions, the record demonstrates that the dismissal without prejudice was not based on the witness' apparent wish to not prosecute or failure to appear. Rather, the dismissal was based on the state's failure to sufficiently demonstrate that the witnesses would not appear at trial and its representation that it was not able to proceed without those witnesses. We find that the dismissal under these facts was not unreasonable, arbitrary, nor unconscionable.

**{¶ 44}** The state's sole assignment of error is overruled.

**{¶ 45}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN T. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR