[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Eatmon*, Slip Opinion No. 2022-Ohio-1197.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1197

THE STATE OF OHIO, APPELLANT, *v*. EATMON, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Eatmon*, Slip Opinion No. 2022-Ohio-1197.]

*Criminal law—Material-witness warrants—When requesting that a court issue a material-witness warrant, state must establish, by oath or affidavit, probable cause to believe that the witness is material and that the warrant is necessary to procure the witness's attendance at trial—Court of appeals' judgment affirmed.*

(No. 2020-1018—Submitted October 27, 2021—Decided April 12, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 108786, 2020-Ohio-3592.

_____

STEWART, J.

{¶ 1} R.C. 2937.16 through 2937.18 and R.C. 2941.48 provide mechanisms by which a trial court may secure the presence of a witness at a criminal trial— either by requiring the witness to provide surety or by ordering that the witness be

detained until trial.  In this discretionary appeal, we consider what the state must establish when requesting that a court issue a material-witness warrant.  The Eighth District Court of Appeals determined that the trial court did not err when it denied the state's requests to issue material-witness warrants because the state failed to demonstrate, by oath or affirmation, "probable cause that warrants were necessary to procure the witnesses' attendance at trial."  2020-Ohio-3592, ¶ 20.  We agree and therefore affirm the Eighth District's judgment.

**Background**

{¶ 2} In December 2017, a Cuyahoga County grand jury returned an indictment charging appellee, Darnell Eatmon Jr., with five counts relating to the shooting of Khaalis Miller: one count each of attempted murder, discharging a firearm on or near prohibited premises, and having a weapon while under a disability; and two counts of felonious assault.  All but the weapons-under-disability charge contained multiple firearm specifications.  The police did not apprehend Eatmon until early 2019.  He pleaded not guilty to the charges.

{¶ 3} The trial court scheduled Eatmon's trial for May 15, 2019.  Approximately three weeks before trial, the state filed motions for recognizance and/or the commitment of material witnesses.  In its briefs in support of those motions, the state requested that the trial court declare Khaalis Miller and his mother, Lisa Ford, material witnesses and order them to give recognizance "in the amount of $5,000 to assure [their] attendance at trial" or, in the alternative, issue an arrest warrant for them and order that they be detained until they testified at Eatmon's trial.  The state's briefs also informed the trial court of the various efforts it had made to contact Miller and Ford.

{¶ 4} With respect to Miller, the state's brief alleged that the assistant prosecutor attempted to call him at multiple phone numbers, left voicemails for him, and mailed letters to him.  The state's investigator also called Miller at "multiple phone numbers" and traveled to four residences in an attempt to locate

him: one in East Cleveland, two in Euclid, and one in Painesville. The investigator left letters at the East Cleveland residence and one of the Euclid residences. A woman answered the door at the second Euclid residence and stated that she had lived there for three years and did not know Miller. At the Painesville residence, another woman answered the door and also claimed that she did not know Miller. But the apartment manager of the Painesville residence subsequently informed the investigator that the apartment was rented to a person with the name "Miller" and that one of the occupants was named "Khaaliah Miller." After receiving the investigator's information, the state sent a letter to Miller at the Painesville address and included a copy of a subpoena for Miller's appearance at an April 3, 2019 pretrial hearing, but Miller did not appear at that hearing. On April 4, 2019, the assistant prosecutor contacted Miller via Facebook but never received a response.

{¶ 5} Regarding Ford, the state's brief in support of its motion explained that she was a material witness because Eatmon had allegedly confessed "his crimes" to her. The brief further explained that the state had called Ford at her place of employment but did not reach her, and there was no answering machine. The state also sent letters to Ford's home and work, requesting that she contact the prosecuting attorney. The prosecutor spoke to Ford's sister, who said that she would have Ford return the prosecutor's call, but Ford did not do so. A Cleveland police detective also went to Ford's home and her job and left letters at both locations, asking Ford to call him. The state claimed in its brief that Ford later called the detective and "yell[ed] at him" for coming to her house and her job and "stat[ed] that she want[ed] nothing to do with the case." Ford further told the detective that Miller did not want the case to be prosecuted, although she did confirm that Miller lived in Painesville and worked in Mentor.

{¶ 6} The trial court held a pretrial hearing on April 30, 2019. Without explanation, the judge denied the state's motions for recognizance and/or the

commitment of material witnesses and stated that Eatmon's trial remained set for May 15, 2019.

{¶ 7} On May 9, 2019, the state moved to continue Eatmon's trial due to its inability to secure the presence of Miller and Ford as witnesses. On May 10, the state filed new motions for material witnesses, this time requesting that the trial court declare Miller and Ford material witnesses, issue arrest warrants for them, and keep them incarcerated without bail until they testified at Eatmon's trial.

{¶ 8} In support of the May 10 motions, the prosecutor submitted briefs that detailed the state's previous efforts to contact Miller and Ford, but also added that she called Miller on April 30, 2019. According to the brief, a male answered the phone and replied, "Yes," when the prosecutor asked for "Mr. Miller." When the prosecutor identified herself, however, the male stated that he would "need to take a message because 'Mr. Miller' was not there." The prosecutor unsuccessfully attempted to call Miller at that same phone number two more times.

{¶ 9} The trial court again denied the state's material-witness motions, but granted the state's motion for a continuance and rescheduled the trial for July 9, 2019.

{¶ 10} On July 9, the court asked the parties whether they were prepared to go forward with the trial. The state informed the court that it was not prepared to do so because Miller and Ford were not present. The state orally renewed its request that the court issue material-witness warrants for Miller and Ford.

{¶ 11} The trial court asked the state what steps it had taken to serve Miller and Ford with a "subpoena so that they would know that the trial [was] set" for that day "and that their presence was requested." The prosecutor began to recite what she had explained in her previous motions, but the court interrupted and said, "But those were for prior occasions * * * and [it] wasn't inclined to issue a material witness warrant at that time." The court asked the state again, "So for this specific date, today's date, what steps did the State take?" The prosecutor told the court

that in addition to the state's previous attempts, letters had been mailed to each witness and subpoenas had been "left at the residence of Lisa Ford for both her as well as her son for today's appearance." The trial court asked the prosecutor whether she had spoken to either witness directly about the trial scheduled for that day. The prosecutor responded that the witnesses would not answer her phone calls. The prosecutor then discussed the time that she had called Miller before she filed her May 10 motions, explaining that she believed Miller had answered the phone but that he then claimed to be someone else after she introduced herself. The court asked the prosecutor whether the witnesses had been personally served with subpoenas. The prosecutor replied that they had not but argued that R.C. 2941.48 "does not require a person or witness to be personally served prior to a warrant being issued."

{¶ 12} The trial court denied the state's request for material-witness warrants, explaining that it had granted the state's request for a continuance "back in May" so that the state could find its witnesses, but that the state still had not done so. The trial court subsequently dismissed the case without prejudice.

{¶ 13} The state appealed the trial court's judgment to the Eighth District Court of Appeals, arguing that the trial court erred when it refused to issue material-witness warrants and dismissed Eatmon's case. The Eighth District affirmed the trial court's judgment, concluding that the state failed to establish probable cause "that the witnesses would not appear at trial." 2020-Ohio-3592 at ¶ 43. The state appealed to this court, and we accepted its sole proposition of law:

> Where a party to a criminal proceeding shows probable cause that a witness is material to its case and the witness is uncooperative and refuses to appear and detention of the witness is necessary to procure the witness'[s] attendance at trial, the Trial

Court shall issue a material witness warrant, pursuant to R.C. 2937.16 and 2937.18.

*See* 160 Ohio St.3d 1451, 2020-Ohio-5166, 157 N.E.3d 771.

### Material-Witness Warrants

**{¶ 14}** The "duty to disclose knowledge of crime * * * is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness." *Stein v. New York*, 346 U.S. 156, 184, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), *overruled on other grounds*, *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The government's authority to arrest and detain material witnesses was "the long established rule of English Law, in effect when the United States became a nation." *Bacon v. United States*, 449 F.2d 933, 938-939 (9th Cir.1971). In *Bacon*, the United States Court of Appeals for the Ninth Circuit observed that material-witness statutes existed in every state. *Id*. at 939. *See also* 18 U.S.C. 3144 (federal material-witness statute).

**{¶ 15}** Ohio's material-witness statutes are set forth in R.C. 2937.16 through 2937.18 and R.C. 2941.48. These statutes provide mechanisms by which a trial court may require material witnesses to give sufficient surety to secure their attendance at trial or, in some cases, order their detention until they testify.

**{¶ 16}** R.C. 2937.16, which governs when witnesses must enter into recognizance, provides:

> When an accused enters into a recognizance or is committed in default thereof, the judge or magistrate shall require such witnesses against the prisoner as he finds necessary, to enter into a recognizance to appear and testify before the proper court at a proper time, and not depart from such court without leave. If the judge or

magistrate finds it necessary he may require such witnesses to give sufficient surety to appear at such court.

{¶ 17} R.C. 2937.18, which governs a witness's refusal to comply with a recognizance order, provides:

> If a witness ordered to give recognizance fails to comply with such order, the judge or magistrate shall commit him to such custody or open or close detention as may be appropriate under the circumstances, until he complies with the order or is discharged. Commitment of the witness may be to the custody of any suitable person or public or private agency, or to an appropriate detention facility other than a jail, or to a jail, but the witness shall not be confined in association with prisoners charged with or convicted of crime. The witness, in lieu of the fee ordinarily allowed witnesses, shall be allowed twenty-five dollars for each day of custody or detention under such order, and shall be allowed mileage as provided for other witnesses, calculated on the distance from his home to the place of giving testimony and return. All proceedings in the case or cases in which the witness is held to appear shall be given priority over other cases and had with all due speed.

{¶ 18} R.C. 2941.48, which addresses the recognizance of witnesses, provides:

> In any case pending in the court of common pleas, the court, either before or after indictment, may require any witness designated by the prosecuting attorney to enter into a recognizance, with or

without surety, in such sum as the court thinks proper for his appearance to testify in such cause. A witness failing or refusing to comply with such order shall be committed to the county jail until he gives his testimony in such case or is ordered discharged by the court. If a witness is committed to jail upon order of court for want of such recognizance, he shall be paid while so confined like fees as are allowed witnesses by section 2335.08 of the Revised Code. The trial of such case has precedence over other cases and the court shall designate any early day for such trial.

{¶ 19} These statutes enable a court to ensure the presence of a material witness at trial if the court has good reason to believe that the witness will not appear. R.C. 2937.16 authorizes a court to order a witness to enter into recognizance "as [the judge or magistrate] finds necessary." R.C. 2937.16 further authorizes the court to require such witnesses "to give sufficient surety to appear at * * * court."

{¶ 20} If a court orders a witness to give recognizance and that witness fails to comply with the court's order, then the court "shall commit" the witness "to such custody or open or close detention as may be appropriate." R.C. 2937.18.

{¶ 21} Similarly, R.C. 2941.48 provides that a court "may require any witness designated by the prosecuting attorney to enter into a recognizance, with or without surety." If the witness fails or refuses to comply with the court's order, then the witness "shall be committed to the county jail" until the witness testifies or the court orders the witness to be released. *Id.*

{¶ 22} It is clear that under R.C. 2937.16 and 2941.48, a court retains some discretion for purposes of initially ordering a witness to enter into recognizance. It is only after a court orders a witness to enter into recognizance and that witness

does not comply with the court's order, that the court is further authorized to issue an arrest warrant for that witness. R.C. 2937.18; R.C. 2941.48.

{¶ 23} A court is similarly authorized to order the arrest of a witness who fails to appear in court after the witness was personally served with a subpoena. *See* R.C. 2317.21 (in such an instance, the court "may issue to the sheriff or a constable of the county, a writ of attachment, commanding him to arrest and bring the person named in the writ before such court or officer at the time and place the writ fixes, to give his testimony and answer for the contempt"). And when a witness is served with a subpoena by residential service and fails to appear, then the court may order the witness "to show cause why such writ should not issue against him" or her. *Id.*

{¶ 24} Thus, it appears that there are two ways in which a court may obtain personal jurisdiction over witnesses: (1) by ordering them to enter into a recognizance or (2) through service of a subpoena. Once either of those things happen and the witness subsequently fails to appear, then the court may issue an arrest warrant for that witness.

{¶ 25} In *State ex rel. Dorsey v. Haines*, a petitioner, who was "being held as a material witness pursuant to the provisions of R.C. 2937.16 through 2937.18 and 2941.48 in the custody" of the county sheriff, filed a writ of habeas corpus. 63 Ohio App.3d 580, 581, 579 N.E.2d 541 (2d Dist.1991). The Second District Court of Appeals granted the writ after determining that a Montgomery County Court of Common Pleas judge had issued the warrant "without the most fundamental rudiments of constitutional due process." *Id.* The Second District explained that "at a minimum, a warrant to detain a material witness must be supported by probable cause, supported by oath or affirmation, to believe that the witness is material and that the detention of the witness is necessary to procure her attendance at trial." *Id.* at 582.

**{¶ 26}** Here, the Eighth District relied on *Dorsey* when it determined that the state had failed to demonstrate probable cause that the warrants were necessary to procure the witnesses' appearance at trial. 2020-Ohio-3592 at ¶ 26. The court of appeals explained that the state (through the detective) had talked to Ford only once—and that conversation "occurred *before* the continuance and *before* residence service of the trial subpoenas." (Emphasis sic.) *Id*. at ¶ 29. The court further pointed out that even after the state had been granted a continuance, it "still failed to secure personal service of subpoenas on Miller and Ford or otherwise directly contact the witnesses to sufficiently demonstrate that they would not show up for trial without a warrant." *Id*. at ¶ 31. The court of appeals concluded that "the state's failure to obtain personal service contributed to its failure to demonstrate probable cause, by oath or affirmation, that detention was necessary to procure the witnesses' attendance at trial." *Id*. at ¶ 26. The court reasoned that "[t]hese requirements are not mere procedural technicalities or formalities. Rather, they exist to ensure that people are afforded ' "the most fundamental rudiments of constitutional due process." ' " *Id*. at ¶ 32, quoting *Robinson v. Green*, 7th Dist. Mahoning No. 16 MA 0134, 2016-Ohio-5688, ¶ 9, quoting *Dorsey* at 581.

**{¶ 27}** The state argues that the material-witness statutes require neither personal service nor an affidavit. While this is true, individuals who may have information regarding a crime still have constitutional rights. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "Article I, Section 14 of the Ohio Constitution affords the same protection in felony cases," *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12, citing *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10, fn. 1, and even

more protection in certain misdemeanor cases, *see State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 22-25. Based on the language in the United States and Ohio Constitutions, we now hold that material witnesses are entitled to these basic, fundamental rights and therefore agree with the Eighth District that the state's request for a warrant to detain a material witness must be by oath or affirmation and be supported by probable cause to believe that the witness is material and that the warrant is necessary to procure the witness's attendance at trial. Federal courts have also held as much. *See Simon v. New York*, 893 F.3d 83, 93 (2d Cir.2018) ("a person detained as a material witness enjoys any Fourth Amendment protection that is extended to criminal suspects. * * * The former is suspected of refusing to share information about a crime, whereas the latter is suspected of having committed one"), citing *Schneyder v. Smith*, 653 F.3d 313, 322 (3d Cir.2011).

**{¶ 28}** The state claims that the facts of this case are similar to the facts in *State v. Hollins*, 8th Dist. Cuyahoga No. 103864, 2016-Ohio-5521, in which the Eighth District Court of Appeals found that the trial court erred when it did not grant the state's motion for a material-witness warrant. *Id.* at ¶ 29. In *Hollins*, however, the state provided a detailed affidavit explaining why the witness was material and setting forth its efforts to procure her attendance at trial. *Id*. at ¶ 25. Specifically, in a telephone conversation before the first trial date, the witness told the prosecutor that she had received a subpoena and that she would appear at trial, but she then hung up on the prosecutor after he began asking questions about the incident. *Id*. at ¶ 3. The witness then refused to answer her phone when the prosecutor tried to call her again on multiple occasions before the first and second trial dates, and she did not respond to the prosecutor's voicemail messages asking that she call him. The prosecutor also obtained personal service on the witness before the second trial date, but she still did not appear. *Id*. at ¶ 6, 8. The Eighth District concluded that under those facts, "court intervention was necessary to

procure [the witness's] attendance at trial," *id*. at ¶ 26, and "the trial court abused its discretion in denying the state's motion for a material witness warrant," *id*. at ¶ 29.

{¶ 29} We agree with the Eighth District that *Hollins* is distinguishable from the facts in the present case, 2020-Ohio-3592 at ¶ 27-32. The state's motion in *Hollins* was supported by a detailed affidavit. Further, in addition to the state's other efforts to contact the witness in *Hollins*, the state perfected personal service on the witness before trial and the witness still failed to appear.

{¶ 30} In its merit brief to this court, the state argues that the prosecutor's statements to the trial court on the record on the day of trial "were never rebutted." The state further maintains that because a prosecutor is an officer of the court and as such must speak truthfully to the court, the prosecutor's statements were the equivalent of a "virtual affidavit." The state provides no authority for recognizing an officer-of-the-court exception to the oath or affirmation requirement of the Fourth Amendment. Moreover, the prosecutor's statements to the court were merely that—statements—not a "virtual affidavit." The difference between a statement and an oath is that an oath contains the additional element of being sworn. *See Youngstown Steel Door Co. v. Kosydar*, 33 Ohio App.2d 277, 279, 294 N.E.2d 676 (8th Dist.1973). The state's "virtual-affidavit" argument is unpersuasive. But even assuming arguendo that the prosecutor's statements could be considered the equivalent of a "virtual affidavit" or an oath or affirmation, the state still did not establish probable cause that Miller and Ford would not appear at trial.

{¶ 31} The state never personally served the witnesses—not for any of the pretrial hearings or the initial trial date, and, most importantly, not for the July 9, 2019 trial. Instead, the state mailed letters to Miller and Ford and left subpoenas for them at Ford's residence. Crim.R. 17(D) states that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person or by reading it to him in person or by leaving it at his usual place of

residence." "When a subpoena is left at a witness' usual place of residence, or business location, or place of employment, and the witness has actual knowledge of the subpoena, service of summons has been completed." *State v. Juenger*, 12th Dist. Butler No. CA2003-02-049, 2004-Ohio-796, ¶ 32, citing *State v. Castle*, 92 Ohio App.3d 732, 734, 637 N.E.2d 80 (9th Dist.1994); *see also Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988) (this court held the same with respect to "actual knowledge" of a subpoena in civil cases under Civ.R. 45). There is nothing in the record to establish that Ford had actual knowledge of the subpoena. And although the state never confirmed where Miller lived, it knew that he did not live with Ford.

{¶ 32} Moreover, at the July 9 hearing, the state focused its arguments on the efforts that it had previously made to contact Miller and Ford—essentially, the efforts it had included in its prior motions. But the trial court granted the state's motion to continue the trial *after* denying those motions. When the trial court asked the prosecutor what the state had done to secure the presence of the witnesses for Eatmon's July 9 trial, the prosecutor explained that the state had mailed letters to Miller and Ford and also left subpoenas for them at Ford's residence. However, this was not sufficient to establish probable cause to believe that the witnesses would not appear at trial.

{¶ 33} Although the state asserts that it "did not just request material witness warrants without any basis in fact," the reality is that the state's efforts merely established that Miller and Ford were reluctant to cooperate. Reluctance to cooperate does not amount to deliberate defiance of a lawfully served subpoena. Simply put, the state failed to lawfully serve subpoenas on the witnesses or ensure that they had actual knowledge of the subpoenas the state left at Ford's residence. The state's efforts were therefore not sufficient to establish probable cause that material-witness warrants were necessary.

{¶ 34} Finally, we address the standard of review for this case. Although the end of an opinion is generally not where we would discuss a standard of review, due to the question presented in this case and our analysis of that question, discussing the standard of review is more appropriate here. The Eighth District applied an abuse-of-discretion standard of review, but it did so in the context of a continuance. It stated, "A request for a continuance to issue a material witness warrant is also reviewed for an abuse of discretion." 2020-Ohio-3592 at ¶ 19, citing *State v. Metz*, 2019-Ohio-4054, 146 N.E.3d 1190, ¶ 86 (8th Dist.). Thus, the Eighth District did not set forth the appropriate standard of review because it framed the issue in the context of a continuance. After reviewing the statutes at issue in this case, it is clear that the standard of review depends on the question presented.

{¶ 35} When reviewing whether a trial court's decision to issue a material-witness warrant was proper, i.e., whether the court could order that a witness be arrested and detained, abuse of discretion is not the proper standard of review. Rather, the appropriate standard of review is for courts to conduct an independent review of the record to determine whether the state established probable cause that the witness is material and will not appear at trial to testify. But when the issue is simply whether the trial court should have ordered a witness to enter into recognizance in the first place, a matter over which the court has discretion, that decision would be reviewed for an abuse of discretion.

**Conclusion**

{¶ 36} When the state requests that a court issue a material-witness warrant, it must establish, by oath or affidavit, probable cause to believe that the witness is material and that the warrant is necessary to procure the witness's attendance at trial. The state did not do so in this case. Therefore, the Eighth District Court of Appeals correctly determined that the trial court did not err by denying the state's request to issue material-witness warrants.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and BRUNNER, JJ., concur.

————————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and John Kosko and Gregory Ochocki, Assistant Prosecuting Attorneys, for appellant.

Cullen Sweeney, Cuyahoga County Public Defender, and John Martin, Assistant Public Defender, for appellee.

————————————